738 So.2d 274 (1999)
Annie CANNON, Appellant,
v.
MID-SOUTH X-RAY COMPANY and E.I. DuPont de Nemours & Company and John Does I-V, Appellees.
No. 97-CA-01122 COA.
Court of Appeals of Mississippi.
February 23, 1999.
Rehearing Denied May 18, 1999.
Certiorari Denied August 26, 1999.
Edward Blackmon, Jr., Canton, Attorney for Appellant.
Dorrance Aultman Rhonda C. Cooper, Jackson, Jennifer J. Selby, Attorneys for Appellees.
EN BANC:
DIAZ, J., for the Court:
¶ 1. Annie Cannon, the appellant, appeals the decision of the Hinds County Circuit Court granting summary judgment to Mid-South X-Ray Company and E.I. *275 Du Pont de Nemours and Company, the appellees, in her personal injury action. On appeal, Cannon contends that the trial court erred in granting summary judgment because there was a genuine issue of material fact regarding the date of accrual for her cause of action. We agree. Therefore, we reverse and remand for a trial on the merits.

FACTS
¶ 2. Cannon began her employment in 1975 with the Mississippi Methodist Rehabilitation Center located in Jackson, Mississippi. As a darkroom technician, she was required to work in small room and use various toxic chemicals manufactured by Du Pont to develop x-ray film. Between 1975 and 1986 Cannon directly handled and mixed the chemicals as part of her job.
¶ 3. Within six months of her employment at MMRC, Cannon began experiencing different health problems including: burning eyes, burning sensations throughout her body, sinus problems, extreme nausea, and severe headaches. During this period, Cannon never suspected that the chemicals she was exposed to at work were associated with her health problems. Furthermore, the doctors who were treating her symptoms did not make a connection between her chemical exposure and her illnesses. In 1983 Cannon began having severe seizures, burning sensations under her skin, and severe headaches. At this point, her doctors began prescribing additional medications to combat these symptoms. As her employment at MMRC continued, Cannon's symptoms progressed and persistently worsened.
¶ 4. By the late 1980's after her symptom severity increased, Cannon sought additional medical assistance. She saw several doctors who did not make definitive diagnoses of her problems. During this period, Cannon states that she did not suspect an association between her numerous health problems and the toxic chemicals she was routinely exposed to at work.
¶ 5. In January of 1992, Cannon's supervisor at MMRC gave her an article entitled, "Darkroom Disease." The article outlined some of the symptoms experienced by people who worked with chemicals in the darkroom of photograph laboratories. After reading the article, Cannon began to suspect that her illnesses were related to her exposure to chemicals at work. Thereafter, in February 1992 Cannon's supervisor received a memorandum requesting that he not inform Cannon of the disease, tell her about the article concerning darkroom disease, or ensure that the safety of her workplace was met and maintained.
¶ 6. In January of 1993, Cannon saw Dr. Robert L. Saulter about her health problems. He referred her to the Ocshner Clinic in New Orleans, Louisiana where she was examined by several physicians. Cannon related her medical history and information about the chemicals at her place of work. During her treatment at the Ocshner Clinic, she received medical confirmation that her illness was associated with chemicals at her workplace. On February 9, 1993, Dr. Todd W. McCune reported that exposure to chemicals at her workplace was a major cause of her health problems.
¶ 7. On August 8, 1995, Cannon filed suit against Mid-South and Du Pont. After a hearing, the Hinds County Circuit Court granted the appellees' motion for summary judgment on January 16, 1997. Feeling aggrieved, Cannon filed this appeal.

DISCUSSION
¶ 8. Summary judgment is a powerful tool which "should be used wisely and sparingly." Martin v. Simmons, 571 So.2d 254, 258 (Miss.1990). It should only be granted when "there is no genuine issue as to any material fact." M.R.C.P. 56(c). When reviewing a decision to grant summary judgment, this Court will review the case de novo. Crain v. Cleveland Lodge 1532, 641 So.2d 1186, 1188 (Miss.1994). *276 All evidentiary matters are viewed in a light most favorable to the non-movant. Id. (emphasis added); Morgan v. City of Ruleville, 627 So.2d 275, 277 (Miss.1993). In other words, Mid-South and Du Pont must show that there is no issue of fact concerning when Cannon discovered her latent injury. In the case sub judice, Mid-South and Du Pont have not met this burden.
¶ 9. Mississippi Code Annotated § 15-1-49(1) (Rev.1995) provides as follows:
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
¶ 10. At issue here is when does a cause of action accrue. "A cause of action accrues only when it comes into existence as an enforceable claim; that is when the right to sue becomes vested." Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 706 (Miss.1990)(adopting and applying the "discovery rule" in limited circumstances in negligence and products liability cases involving latent injuries). The Mississippi Supreme Court held that the statute of limitations commences upon discovery of an injury and that discovery is an issue of fact to be decided by a jury where there is a genuine dispute. Schiro v. American Tobacco Co., 611 So.2d 962, 964 (Miss. 1992).
¶ 11. The court further held in both Schiro and Edwards that the accrual date for a cause of action arose on the date the illnesses were diagnosed by a doctor. Schiro, 611 So.2d at 965; Edwards, 573 So.2d at 709. Additionally, the court in Schiro recognized that Schiro knew she had sustained some type of injury within six years of the detection of lung disease. Schiro, 611 So.2d at 965. However, since the cancer had not been medically diagnosed, Schiro did not actually know what her injury was; therefore, any suit she brought then would have been premature. Id.
¶ 12. The dissent in this case would prefer to use the statute of limitations applicable to medical malpractice claims instead of the statute of limitations applicable to actions not otherwise specifically provided for under Mississippi Code Annotated Section 15-1-49 to deny Cannon's personal injury claim. The dissent reasons that the judicial interpretation and statutory language of Mississippi Code Annotated Section 15-1-36 would limit Cannon to filing her claim within two years of "the date [of] the alleged act, omission or neglect ... [which] with reasonable diligence might have been first known or discovered." This assertion might be true if the instant case was a medical malpractice claim. However, it is not. Cannon filed this lawsuit against Mid South and Du Pont for causing her injuries as a darkroom technician, not against medical doctors for malpractice. The applicable statute of limitations found in Section 15-1-36 would allow this case to proceed and the reversal of summary judgment is therefore appropriate. In fact, the dissent makes the point that this case was not ripe for summary judgment by arguing that a different statute of limitations applies and that Cannon should have known of her injury well before she filed her claim. Under Schiro, the discovery of an injury is an issue of fact to be decided by a jury where there is a genuine dispute such as we have here.
¶ 13. Cannon, like Schiro, contends that there exists a genuine issue of material fact relating to the defense of the statute of limitations and that such fact is within the province of the jury to decide the time a cause of action accrues. Cannon asserts that her cause of action against the appellees accrued on February 9, 1993, when Dr. McCune told her that *277 exposure to chemicals at her workplace was a major cause of her health problems. The appellees counter that under the applicable statute of limitations, Cannon failed to bring her claim within three years after the alleged injury. Mid-South and Du Pont contend that Cannon should be charged with discovery of her injuries from the time she initially sought treatment for her illnesses between 1980 and 1990. In the alternative, the appellees assert that Cannon knew of the connection between her illnesses and toxic workplace in January 1992 when she read the article about darkroom disease. The appellees tried to support their argument that she knew of her injury and its cause by stating that between January and July of 1992 Cannon took a leave of absence, contacted attorneys about the possibility of a workers' compensation claim, and contacted the author of the article on darkroom disease. Therefore, the latest possible date Mid-South and Du Pont are willing to concede that Cannon discovered her illness and its cause is July 22, 1992, when Cannon contacted the author, Marjorie Gordon. Additionally, Cannon received a letter from Gordon plus more information on darkroom disease dated August 13, 1992.
¶ 14. It cannot be said, with regard to the steps taken by Cannon in 1992 to find out more about her illnesses, that any affirmative diagnosis was given to her by a medical doctor establishing a connection between her workplace and resulting illnesses. Cannon lacks any specialized training in toxicology, pharmacology, or radiology and is by all accounts a darkroom technician who could not reasonably be expected to diagnose a disease on which the scientific community has yet to reach an agreement.
¶ 15. The appellees rely on Kemp v. G.D. Searle & Company, 103 F.3d 405 (5th Cir. 1997) for the proposition that Cannon's illnesses were previously diagnosed and thereby made her claim under the darkroom disease theory time-barred. In Kemp, the court found that the diagnosis of infertility was a complication of an earlier diagnosed problem, namely pelvic inflammatory disease. Id. at 410. However, Kemp is distinguishable from the case at bar because the Kemp court concluded that the statute of limitations began to run when Kemp knew of her injury and its cause. Id. (emphasis added). Although Cannon was aware that she was suffering from numerous illnesses and later thought that her problems might be connected with her employment, no doctor had definitively diagnosed her condition until February 9, 1993.
¶ 16. Mid-South and Du Pont claim that the statute of limitations in this case began to run no later than July 22, 1992, and therefore, Cannon's claim is time-barred. On the other hand, Cannon claims that her injury did not accrue until February 9, 1993, when Dr. McCune diagnosed her problems and the cause. Since a genuine issue of material facts exists surrounding the date of accrual in this cause of action, the grant of summary judgment was improper. It is within the province of the jury to decide the time that Cannon's cause of action accrued since that fact is in dispute. Therefore, we reverse and remand for a trial on the merits.
¶ 17. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR A TRIAL ON THE MERITS. ALL COSTS OF THIS APPEAL ARE TO BE SPLIT EQUALLY BY THE APPELLEES.
BRIDGES, C.J., AND THOMAS, P.J., COLEMAN, IRVING, KING, LEE, AND PAYNE, JJ., CONCUR.
SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McMILLIN, P.J.
SOUTHWICK, J., dissenting.
¶ 18. My disagreement with the majority concerns what a potential plaintiff must know before the statute of limitations for a latent disease begins to run. The majority *278 holds that the plaintiff had to know of her illness and its cause. In my view, the supreme court has specifically rejected that interpretation of this statute. All that is necessary is the plaintiff know of her illness. Since I believe that we are failing to apply controlling supreme court precedent, I dissent.
¶ 19. The parties and the majority agree that it is the general statute of limitations that applies in this litigation. It states that the cause of action for "latent injury or disease" accrues when "the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2). To distinguish that standard from the one that the majority uses, I find it useful first to discuss a different statute of limitations to which the majority's analysis would apply. That statute is for medical malpractice claims and requires knowledge of an injury and also its cause. Miss.Code Ann. § 15-1-36. That statute does not apply here. My point is that the supreme court's interpretation of the irrelevant statute should not be imported to the separate relevant one.
¶ 20. The medical malpractice statute originally stated that a claim in tort could not be brought against a physician "for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss.Code Ann. § 15-1-36 (Supp.1986). Now the statute establishes in most circumstances a maximum period of seven years after the alleged negligence occurred, regardless of the date of discovery. Miss.Code Ann. § 15-1-36(2) (Supp.1998).
¶ 21. The supreme court analyzed the statute this way:
There may be rare cases where the patient is aware of his injury prior to the two years immediately preceding the filing of his claim, but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made. See United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (interpreted the statute of limitations under the Federal Tort Claims Act; the focus is not upon when the plaintiff actually discovered that legally he had a cause of action; instead, it is upon when he discovered, or should have discovered, that he had an injury and the cause of such injury; these discoveries give him sufficient knowledge to inquire as to whether he has a cause of action)[second citation omitted].
Smith v. Sanders, 485 So.2d 1051, 1052-1053 (Miss.1986).
¶ 22. The language chosen by the legislature for the medical malpractice statute is key to its meaning: the time to file suit does not commence until the "act, omission or neglect" with reasonable diligence first is or should have been discovered. In other words, there not only has to be an injury, but the prospective plaintiff must know of the "act, omission or neglect" that caused it.
¶ 23. That is not the language nor the interpretation of the statute of limitations that is applicable in the present case. The relevant general statute of limitations holds that in suits "for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss.Code Ann. § 15-1-49(2). What that means was discussed in a case relied upon by the majority here:
The cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease. Though the cause of the injury and the causative relationship between the injury and the injurious act or product may *279 also be ascertainable on this date, these factors are not applicable under § 15-1-49(2), as they are under Miss.Code Ann. § 15-1-36.
Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 709 (Miss.1990) (emphasis added). The "cause of the injury" and the "causative relationship" between the injury and the "injurious act" are, as Edwards holds, explicitly not applicable factors in determining when this statute of limitations begins to run. Under section 15-1-49, the 3-year statute of limitation calendar begins as soon as the plaintiff becomes aware of the disease or injury.
¶ 24. The majority reverses summary judgment as to the statute of limitations because it finds that the date for commencement of the running of the statute is a matter of disputed fact. In my view the only dispute concerns facts that are immaterial. No delay is authorized under this statute as a prospective plaintiff allegedly remains uncertain regarding the cause of her illness. This is shown in another case relied upon by the majority. In that suit the plaintiff brought suit against tobacco companies for the effects of her smoking; the court held that the cause of action accrued and the statute of limitations began to run when she was diagnosed with lung cancer. Schiro v. American Tobacco Co., 611 So.2d 962, 965 (Miss.1992). The earlier dates when the plaintiff stopped smoking, or two dates when she had reason to believe but had no physician's confirmation that she had cancer, did not begin the limitations period. Id.
¶ 25. For the plaintiff here also to be permitted sufficient delay in bringing her suit, the initial diagnosis of the illnesses for which she is seeking compensation must have been within the three years prior to her complaint. In fact, all the illnesses that she claims arose from the effects of the chemicals in the darkroom were diagnosed well before the relevant date:
a) plaintiff was diagnosed in 1980 with myofacial pain and spasm;
b) she was diagnosed in 1985 with epilepsy;
c) in 1985 she was diagnosed as having vascular headaches;
d) in 1986 she was diagnosed as suffering from lumbosacral strain.
e) she learned prior to 1987 that she suffered from a seizure disorder;
f) her varicose veins were discovered in 1989;
g) plaintiff knew prior to 1990 of maxillary sinusitis;
h) bursitis was diagnosed in 1991;
i) degenerative arthritis of the spine was diagnosed in 1991;
j) general joint pain and stiffness and tendonitis arose by 1991.
¶ 26. These are the injuries and illnesses that with reasonable diligence not only should have been, but were discovered well before three years prior to the commencement of this suit. Thus the suit was timebarred because the illnesses had been medically diagnosed for too long before litigation was commenced.
¶ 27. The majority sets out the plaintiff's strong suspicions regarding her employer's possible role in her illness and the fact questions as to the state of those suspicions at different times. However, as Owens-Illinois v. Edwards makes clear, receiving confirmation of the cause of the illness is not part of the accrual of a cause of action under this statute. I respectfully find that the majority errs in holding that the limitation statute remained dormant as to her claim until an "affirmative diagnosis was given her by a medical doctor establishing a connection between her workplace and resulting injury."
¶ 28. I find there is no dispute of material fact and that summary judgment was properly entered.
McMILLIN, P.J., JOINS THIS SEPARATE OPINION.