**Herman Frederick JACKSON, et al., Plaintiffs,**

v.

**PHILLIPS BUILDING SUPPLY OF LAUREL, et al., Defendants.**

**No. CIV.A.2:02–CV–43PG.**

United States District Court, S.D. Mississippi, Hattiesburg Division.

Feb. 14, 2003.

Timothy W. Porter, Patrick Cash Malouf, Porter & Malouf, Jackson, John A. Foxworth, Jr., Michael J. Casano, Foxworth & Casano, P.A., Gulfport, for Herman Frederick Jackson, Billy Raye Ishee, Galey Ducksworth, Jr., Roy Lee Merrick, plaintiffs.

William Lee Guice, III, Rushing & Guice, Biloxi, Fred Krutz, III, Thomas W. Tardy, III, Roland M. Slover, Forman, Perry, Watkins, Krutz & Tardy, Robert L. Gibbs, Norman E. Bailey, Jr., Brunini, Grantham, Grower & Hewes, Dudley Collier Graham, Jr., Wise, Carter, Child & Caraway, Jackson, James E. Upshaw, Finisse Ewin Henson, III, Upshaw, Williams, Biggers, Beckham & Riddick, Greenwood, Mark C. Carroll, William H. Gillon, IV, Upshaw, Williams, Biggers, Beckham & Riddick, Jackson, Antony B. Klapper, Kirkland & Ellis, Washington, DC, Brooke Ferris, III, Ferris, Burson & Entrekin, PLLC, Laurel, Mark W. Garriga, Stephanie M. Rippee, W. Scott Welch, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Michael J. Sweeney, Dickie, McCamey & Chilcote, Pittsburg, PA, John G. Corlew, William F. Goodman, III, John L. Low, IV, Virginia T. Munford, Katherine K. Smith, Watkins & Eager, Jackson, Joseph Michael David, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Richard H. Deane, Jr., Jones, Day, Reavis & Pogue, Atlanta, GA, Charles H. Moellenberg, Jr., Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Phillips Building Supply of Laurel, As Successor In Interest to Laurel Building Supply, Feltus Brothers Hardware Company, Sears, Roebuck and Company, Benjamin Moore & Company, ICI North America, Inc., d/b/a and Successor In Interest to Glidden Paints, ICI North America, Inc., d/b/a and Successor In Interest To and Fuller O'Brien Paints, NL Industries, Inc., Formerly National Lead Co., And Formerly Dutch Boy Paints; PPG Industries, Incorporated, d/b/a and Successor In Interest to Pittsburgh Paints, Sherwin–Williams Company, Does 1–10, defendants.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Plaintiffs' Motion to Remand. The parties having fully briefed the issues, and having presented oral argument, the motion is now ripe for decision.

### FACTUAL BACKGROUND

The Plaintiffs, who are all Mississippi residents, used lead-based paints that they purchased from Mississippi retailers who are named as Defendants in this lawsuit. The Plaintiffs allege that as a result of exposure to lead paint they suffer from various ailments, including neurological and psychological deficits; high blood pressure and related cardiovascular problems; gout; and renal injuries. The Plaintiffs first purchased lead-based paints from the resident Defendants beginning in the 1950s. The last purchase and exposure alleged was from the 1970s. The Plaintiffs were diagnosed with various symptoms and ailments throughout the 1970s, 1980s, and 1990s. There is no evidence, nor allegation, suggesting that a physician traced the cause of these conditions to exposure to lead-based paint more than three years prior to the filing of the complaint in state court. The Plaintiffs filed their complaint in the Circuit Court of Jones County, Mississippi on January 14, 2002.

## STANDARD OF REVIEW

■ The removal statutes are to be strictly construed against removal. *Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979). The Defendants, as the removing parties, bear the burden of establishing the Court's jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.1993). Generally, where there are close questions whether to remand an action, the Court will resolve the issue in favor of remand. *OPNAD Fund, Inc. v. Watson*, 863 F.Supp. 328, 330 (S.D.Miss. 1994); citing *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000).

■ Through decades of Supreme Court jurisprudence, it is axiomatic that federal courts are courts of limited jurisdiction. *See generally B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). All federal district courts are well advised not to poach upon the territory of a coordinate judicial system. *Id.* at 548. "When a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 216 (5th Cir.1998) (en banc). Under our doctrine of "federalism" this Court should not usurp authority over cases that are properly in state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Butler*, 592 F.2d at 1296.

■ This case involves allegations that the Plaintiffs fraudulently joined resident defendants solely for the purpose of defeating diversity jurisdiction. In determining the issue of fraudulent joinder, the Court may pierce the pleadings and employ a summary-judgment type proceeding. *Badon v. RJR Nabisco*, 224 F.3d 382, 393–94 (5th Cir.2000); *Burden v. Gen'l Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995). Whether to pierce the pleadings or not to pierce the pleadings is a matter of discretion for the trial court. *See Burden*, 60 F.3d at 217 ("in testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings'"). Fifth Circuit precedent also warns trial courts not to "pre-try" cases. *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000). The Defendants agree that this case can be resolved based on the allegations in the pleadings.

## POSITIONS OF THE PARTIES

The Defendants contend that the applicable three-year statute of limitations has expired with regard to Plaintiffs' cause of action; therefore, there is no possibility of recovery against the resident Defendants. They assert that the Plaintiffs were last exposed to lead-based paint in the 1970s. The symptoms and ailments began to present themselves more than three years before the filing of the present lawsuit. The Defendants contend that the Plaintiffs should have known that exposure to lead containing paint caused their conditions, or that the Plaintiffs were under an obligation to discover the cause of these symptoms in a timely fashion. As stated in paragraph eight of the Defendants Notice of Removal, "[g]iven that the Plaintiffs claim that their last 'use' and 'purchase' of lead containing paints from the Mississippi Defendants was in the 1970s, Plaintiffs should have sued the local retailers long ago when they were first diagnosed with their unspecified ailments."

The Plaintiffs counter that under Mississippi's discovery rule for latent diseases, the cause of action did not accrue until the Plaintiffs discovered both the injury or disease *and* its cause. Plaintiffs contend that the cause of Plaintiffs' ailments, i.e. exposure to lead containing paints, was not discovered by physicians more than three years prior to the filing of this lawsuit. As such, the Plaintiffs argue that their complaint was timely.

## ANALYSIS OF STATUTE

■ The parties agree that this case is controlled by Miss.Code Ann. § 15–1–49, which provides:

(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

This section codifies a discovery rule for "latent injury or disease." However, the trigger for starting the running of the statute of limitations is not the discovery of the "disease" but rather the discovery of "the injury." The statute draws a distinction between disease and injury. The statute does not begin to run upon the discovery of the "disease" but upon discovery of the "injury," which involves not only the result (the disease or injury) but also the cause since injury implicates either an accident or tort as the cause. Thus under the wording of the statute, the statute of limitations does not begin to run until the injured party knows both the result, i.e. the injury or disease, and the cause, i.e. the injury.

## ANALYSIS OF CASE

The Defendants argue that *Owens–Illinois, Inc. v. Edwards*, 573 So.2d 704 (Miss. 1990) is controlling law that predicts how the Mississippi Court would rule on the issue raise by Plaintiffs' Motion to Remand. The Court in *Owens–Illinois* stated the issue presented in that case as "whether Edwards' claim is time barred under Miss.Code Ann. § 15–1–49 (1972), or whether a 'discovery' rule exists which is applicable in a products liability and negligence action involving latent diseases." *Id.* at 704. The Court also stated that "the question presented is simply this: When did Charles Edwards' cause of action accrue?" *Id.* at 705.

It should be noted that there was no statutory discovery rule at the relevant time period involved in *Owens–Illinois*, because Miss.Code Ann. § 15–1–49 (1972) did not contain subsection (2) at that time. The Mississippi Supreme Court affirmed the circuit court's finding that there was a discovery rule even before the Legislature enacted subsection (2) of § 15–1–49.

The trial judge in *Owens–Illinois* concluded that " '[t]he operative time is when the plaintiff can reasonably be held to have knowledge of the fact that he or she has been injured, the cause of the injury, and the causative relationship between the injury and the injurious act or product.' " *Id.* at 706. That is the same result now argued for by Plaintiffs. The Supreme Court noted that "because of the mixed signals that this Court has sent out on the matter of accrual, both sides in this cause are able to cite convincing authority." *Id.* at 707.

The Court noted that Miss.Code of 1972, § 15–1–36, which deals specifically with medical malpractice, provides a statute of limitations which begins to run "from the date the alleged act, omission, or neglect shall or with reasonable diligence might

have been first known or discovered." *Id.* The Court concluded

> We affirm the Circuit Court's finding that a discovery rule exists in conjunction with § 15–1–49 (1972) in the case of a negligence or products liability cause of action involving latent disease. To alleviate any possible confusion, we find that the discovery rule adopted is identical to the rule provided in Miss.Code Ann. § 15–1–49(2) (Supp.1990). The cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease. In the case at bar, that date is August 26, 1986, the date Charles Edwards was diagnosed with asbestosis. *Though the cause of the injury and the causative relationship between the injury and the injurious act or product may also be ascertainable on this date, these factors are not applicable under § 15–1–49(2),* as they are under Miss.Code. Ann. § 15–1–36. The judgment of the Circuit Court is modified to the extent that it differs from the statutory rule.

(emphasis added). *Id.* at 709. It is this underlying language that Defendants rely on.

In *Owens–Illinois,* the plaintiff filed a motion for partial summary judgment and requested a ruling that his cause of action was not barred by § 15–1–49. *Id.* at 706. Defendants filed a cross motion requesting the court find that the cause of action was time barred. *Id.* The trial court granted summary judgment for plaintiff finding that Edwards' cause of action was not barred. *Id.* at 705–06.

The facts of that case were that Edwards had last been exposed to asbestos on December 31, 1976. He began experiencing symptoms that indicated asbestosis in 1980 and in 1983. It was recommended by medical examiners at his employer's place of business that he should be checked for the possibility of asbestosis. X-rays revealed no evidence of asbestosis. However, on August 26, 1986, Edwards was diagnosed with "pleural asbestosis." The defendants argued that the statute of limitations began to run at the time Edwards was last exposed to asbestos. *Id.* at 705. The decision in *Owens–Illinois* was somewhat contradictory. The trial court granted summary judgment and the Supreme Court affirmed partial summary judgment thus concluding as a matter of law that Edwards' claim was not time barred; however, in the last paragraph of the opinion, the Court wrote that one of the defendants "raises a separate issue, that summary judgment was inappropriately granted against it because Charles Edwards knew or should have known of his asbestosis as early as 1983. We find this issue to be premature for disposition at this time.... [D]efendants ... may in the trial court further litigate the issue of what Charles Edwards knew and when he should have known it." *Id.* at 709. Consequently while on one hand it appears that the Mississippi Supreme Court ruled as a matter of law that Edwards was not time barred, on the other hand, the Mississippi Supreme Court, in the last paragraph, said this issue could still be litigated before the jury.

*ANALYSIS OF SCHIRO V. AMERICAN TOBACCO CO., 611 So.2d 962 (Miss.1992)*

The Court in *Schiro* wrote

> Here we face the question of when the statute of limitations commences with regard to a claim based on negligence arising out of an injury allegedly sustained as a result of cigarette smoking. We hold that the statute commences upon discovery of an injury and that discovery is an issue of fact to be decided by a jury where there is a genuine dispute.

*Id.* at 962. The trial court in that case had ruled in favor of the cigarette manufacturers, and the Supreme Court reversed and remanded. The plaintiff Schiro argued that there existed a "genuine issue of material fact relating to the defense of the statute of limitations and that such fact [was] within the province of the jury to decide the time a cause of action accrue[d]." *Id.* at 964.

Schiro started smoking in 1943 at age 17. She was familiar with the Surgeon General's warning in 1964. In 1970, she was diagnosed with emphysema. She was advised by several physicians to quit smoking but she continued to smoke. In 1974, one of her physicians was concerned that she might have throat cancer but further examination indicated to the contrary. She had aortoiliac bypass surgery in 1975 and " 'assumed that smoking damaged her arteries,' " nevertheless she continued to smoke. She coughed up blood in 1981. She believed at that time she had cancer, but her examining physician determined that she did not have cancer. In December 1981, a treating physician performed a chest x-ray which detected a small mass. This was confirmed by another x-ray on December 29, 1981, "which revealed lung disease in her chest. On January 24, 1982, Schiro was admitted to the Mississippi Baptist Medical Center, where Dr. Johnson performed an examination on Schiro, and subsequently informed her that the mass was malignant." *Id.* at 963. The Mississippi Supreme Court then held "that in the instant case the cause of action accrued on January 26, 1982, when the doctor diagnosed that the mass was cancerous." *Id.* at 965. Defendants argued that all the previous health problems, specifically those which occurred in December 1981, should have demonstrated to plaintiff that she had a cause of action. *Id.* at 964. The Supreme Court responded saying

the contention that Schiro should have brought suit on December 27, or 29, 1981, or within six years of those dates after discovery of the mass also fails. It could be argued that at this point, Schiro was aware and, in fact, knew that she had sustained an injury. However, as aforementioned, Schiro did not actually know that she had cancer, an injury connected with smoking.

*Id.* at 965.

The Mississippi Supreme Court in *Schiro* ruled that the statute of limitations did not begin to run until "Schiro actually knew that she had cancer.... an injury connected with smoking." *Id.* Thus, the Mississippi Supreme Court in 1992 required discovery of both the disease (cancer) and the cause of the injury (smoking). It should likewise be noted that in the *Owens–Illinois* case the Mississippi Supreme Court did not have to rule as to whether or not causation was known or whether that was relevant or not relevant. All the Court had to determine in *Owens–Illinois* was that there was a discovery rule as to latent injury or disease under Mississippi law even before the Legislature had codified it. Charles Edwards was well aware that he had been exposed to asbestos and that it might cause him injury. Consequently, when he was diagnosed with asbestosis, there was no question as to the cause of the disease. In fact, the diagnosis itself conveyed knowledge of causation. "Asbestosis" is caused by asbestos. The statement relied on by Defendants in *Owens–Illinois* was thus dictum.

There are a couple of inconsistencies in the *Schiro* opinion that bear mentioning as well. First, the Supreme Court recognized that when an injury should have reasonably been discovered "is an issue of fact to be decided by a jury where there is a genuine dispute;" nevertheless, although the issue of when plaintiff reasonably

should have discovered her injury was hotly contested, the Supreme Court as a matter of law found that it did not begin to run until "January 26, 1982, when the doctor diagnosed that the mass was cancerous." *Id.* at 962, 965. It should further be noted that Schiro had not asked the court to rule on this issue as a matter of law but that she had simply argued that this was an issue for the jury.

*ANALYSIS OF KEMP v. G.D. SEARLE & CO., 103 F.3d 405 (1997)*

The Fifth Circuit addressed the statute of limitations issue in *Kemp v. G.D. Searle & Co.,* 103 F.3d 405 (1997). In that case, plaintiff used an "intrauterine device ('IUD')" in 1977 and was diagnosed with "pelvic inflammatory disease ('PID')" in 1984. *Id.* at 406. The Fifth Circuit noted "it is unclear whether Hakel [the physician] indicated to Kemp at the time that PID had been caused by the IUD." *Id.* The Court found that in December 1985 "Kemp was told at least of the connection between the IUD and her PID and that PID can lead to tubal scarring which, if severe enough, can result in infertility." *Id.* At that time, the treating physician would not do any diagnostic work to determine if she was infertile, on the basis that such a procedure was too invasive unless she first tried unsuccessfully to conceive for 18 months. Years later, in 1993, Kemp in receiving treatment for other medical problems learned for the first time that "her fallopian tubes were severely scarred" and that she was infertile. *Id.* Kemp claimed that she had two causes of action, one for her PID and the other for her infertility. She acknowledged that her claim for PID was time barred. *Id.* The Fifth Circuit ruled that she did not have two causes of action but merely one cause of action and that the statute of limitations began to run when the PID was diagnosed, stating "[w]e hold that Kemp had a single cause of action that accrued when she discovered the PID *and its source . . .*" (emphasis added). *Id.* at 407. Consequently the Fifth Circuit ruled that plaintiff not only had to know when she had the injury but she also had to know its source. *Id.* Defendants argue that this statement was dictum and was not necessary to the Court's decision, but at the very conclusion of the opinion the Fifth Circuit reiterates this same holding: "We simply hold that the district court was correct in concluding that Kemp's injury was the PID and that the statute of limitations began to run when she knew of her injury *and its cause,* not when she later discovered all of the consequences and complications of the PID." (emphasis added). *Id.* at 409. Thus, in two places in its opinion, the Fifth Circuit Court of Appeals interpreting the *Owens–Illinois* case concluded that the plaintiff had to know about both the injury and its cause before the statute of limitations began to run.

■ Although defendant makes a persuasive argument that the Mississippi Supreme Court in *Owens–Illinois* stated that knowledge of causation was not necessary before the statute of limitations began to run, such a finding was dictum. The finding in *Schiro,* which was a later case, was not dictum. When the Fifth Circuit interpreted *Owens–Illinois,* and found that the statute did not begin to run until discovery of the injury *and its cause,* this was likewise dictum. Nevertheless, if the Fifth Circuit so interpreted *Owens–Illinois,* it is difficult for this Court to conclude there is no possibility that Plaintiffs can prevail on their statute of limitations argument in state court against the resident Defendants. Moreover, the Mississippi Court of Appeals, in *Cannon v. Mid–South X–Ray Co.,* 738 So.2d 274 (Miss.App.1999), analyzed Owens–Illinois, *Schiro,* and *Kemp* and reached the same basic conclusion as

this Court. The *Cannon* court stated that "although [plaintiff] was aware that she was suffering from numerous illnesses and later thought that her problems might be connected with her employment, no doctor had definitively diagnosed her condition until February 9, 1993." The court held that "her injury did not accrue until February 9, 1993, when Dr. McCune diagnosed her problems *and the cause.*" *Id.* at 277 (emphasis added). Thus, this Court concludes that under Mississippi law, there is a possibility that Plaintiffs' cause of action did not accrue until a physician diagnosed the problem and its cause. At the very least, there is an ambiguity in Mississippi law that should be construed in favor of remand.

This Court has noted the ambiguities or contradictions in *Owens–Illinois, Schiro,* and *Kemp.* The Mississippi Supreme Court on numerous occasions has concluded that where there are factual disputes the question of whether or not the statute of limitations has run is an issue for the jury. This Court is not called upon to determine whether or not plaintiff will or even probably will prevail, but that there is a possibility that Plaintiffs will prevail. All ambiguities, both factual and legal, are to be construed in favor of remand. Consequently this case should be remanded. In light of the complexity of the legal questions presented, the Court finds that the Plaintiffs' request for sanctions for the filing of a frivolous removal is denied.

THEREFORE, IT IS ORDERED AND ADJUDGED that Plaintiffs' Motion to Remand is GRANTED. Plaintiffs' Motion for Sanctions is DENIED.