# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00324-SCT

*WILMER ROBINSON, JR.*

*v.*

*SINGING RIVER HOSPITAL SYSTEM AND DAVID CISSEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/97 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM T. REED |
| ATTORNEYS FOR APPELLEES: | BRETT K. WILLIAMS |
| | JAMES H. HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 2/4/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Wilmer Robinson appeals from a judgment of the Circuit Court of Jackson County, Mississippi, granting Singing River Hospital's and David Cissel's Motion for Summary Judgment on the basis that the action was time barred pursuant to the one-year statute of limitations of Miss. Code Ann. § 11-46-11, contained in what is commonly referred to as the Mississippi Tort Claims Act . Miss. Code Ann. §§ 11-46-1 *et seq*. (Supp. 1998). Robinson sustained burns on the backs of his legs from hot packs while he was undergoing physical therapy at Singing River Hospital ("Singing River").

¶2. Robinson appealed to this court, raising the following issues for consideration:

> **I. WHETHER THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT.**

**II. WHETHER THE STATUTE OF LIMITATIONS SHOULD BE TOLLED BECAUSE SINGING RIVER FRAUDULENTLY CONCEALED ROBINSON'S MEDICAL RECORDS.**

¶3. The Court finds these issues to be without merit.

## FACTS

¶4. Wilmer Robinson ("Robinson") is an incomplete quadriplegic who walks with the assistance of a cane and who sought medical treatment for pain in his lower extremities and back. Physical therapy was prescribed at Singing River Hospital in Pascagoula, Mississippi, by Dr. Barrett, a local physician. On August 30, 1993, Dr. Michael Winkelmann, a specialist in physical medicine from Jackson, Mississippi, who was also treating Robinson, faxed a prescription for physical therapy to the hospital. The treatment prescribed by Dr. Winkelmann focused on Robinson's heels and hamstrings and specified the use of ultrasound. An ultrasound device is a machine that produces ultrasonic waves that create vibrations in the muscle tissues to create heat. For Robinson, they would be used in a streaking motion on the hamstring musculature prior to stretching.

¶5. David Cissel ("Cissel"), a physical therapist employed at Singing River, administered approximately 17 physical therapy treatments from September 1, 1993, until November 21, 1993, when the subject injuries occurred. During the November 21 physical therapy session, Robinson sustained severe burns to the backs of his legs. The burns were caused by the application of hot packs to the back of Robinson's legs. Although the physical therapy orders from Dr. Barrett were non-specific, hot packs were not prescribed by Dr. Winkelmann because they were contraindicated for patients, such as Robinson, with impaired feeling in their lower extremities. However, hot packs were used on many occasions without incident prior to Robinson's being burned. At Singing River, hot packs were containers of silicon gel heated in a hot water tank and used with pads and/or towels to warm tissues as a part of physical therapy. Apparently, hot packs and ultrasound are used for the same therapeutic benefit.

¶6. Dr. Winkelmann followed Robinson's treatment for burns beginning in December, 1993, when on evaluation, he found a 10 x 10 cm. burn area on the right calf which was classed as a second degree burn and a 2 x 2 cm. "defect" on the left leg which appeared to be healing. On November 15, 1994, following treatment that included debridement and plastic surgery, Dr. Winkelmann noted that the burns were completely healed and that there was no permanent impairment to Robinson's legs.

¶7. Robinson alleges that he did not become aware that the burns were the result of a treatment error until September 8, 1995, when he received correspondence from Dr. Winkelmann stating that the burns were the result of the therapist's applying hot packs, which severely burned Robinson's legs, rather than the prescribed ultrasound.

¶8. However, on April 14, 1994, soon after the date of the injury on November 21, 1993, an attorney retained by Robinson wrote to Singing River Hospital requesting records regarding injuries he had sustained in an accident that occurred in November, 1993. It is uncontroverted that the "accident" referred to is that which is the subject of this proceeding.

¶9. On October 17, 1995, through a new attorney, Robinson filed suit against Singing River and Cissel, alleging that the burns to his legs were a result of their negligence during the November 21, 1993, physical

therapy session and claiming *res ipsa loquitur.* The suit was filed 23 months after Robinson's injury and some 18 months after his attorney requested records from Singing River for injuries arising out of the accident that occurred in November, 1993.

¶10. Singing River and Cissel filed a motion for summary judgment on January 4, 1996, arguing that the action was time barred under the one-year statute of limitations of Miss. Code Ann. § 11-46-11, reasoning that, because the hospital is a political subdivision and Cissel is the employee of a political subdivision, Robinson's claim is governed by the Tort Claims Act rather than the general malpractice statutes. Robinson objected, arguing that his claim was governed by the two year statute of limitations of Miss. Code Ann. § 15-1-36(1), regarding medical malpractice actions. He also charged that § 11-46-11 is unconstitutional; that he did not discover or have medical proof of his injury until September 8, 1995; and, that Singing River concealed information, tolling the statute of limitations.

¶11. On March 1, 1996, the trial court issued an order holding the motion for summary judgment "in abeyance" and granted Robinson an opportunity to conduct discovery relevant to the statute of limitation issues. The motion was then considered at a hearing on January 17, 1997; and, on February 26, 1997, the court entered an order granting the motion for summary judgment.

## STATEMENT OF THE LAW

## STANDARD OF REVIEW

¶12. This Court reviews a motion for summary judgment under a *de novo* standard, and a motion for summary judgment is granted only when the trial court finds that the plaintiff would be unable to prove any facts to support his claim. *Delahoussaye v. Mary Mahoney's, Inc.,* 696 So.2d 689, 690 (Miss. 1997). On appeal, the lower court's decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party. *Box v. State Farm Mut. Auto. Ins. Co.,* 692 So.2d 54, 56 (Miss. 1997).

## DISCUSSION

### I. THE LOWER COURT DID NOT ERR IN GRANTING THE MOTION FOR SUMMARY JUDGMENT.

¶13. Robinson asserts that a genuine issue of material fact exists as to when he became aware of the relationship between his injuries and Cissel's failure to use the prescribed treatment, thus precluding summary judgment.

¶14. Singing River Hospital is a political subdivision of Jackson County, Mississippi, and David Cissel is its employee. As such, the action is governed by the Mississippi Tort Claims Act and, in order to pursue his claim, Robinson's suit is subject to the Act's statute of limitations provisions. Section 11-46-11 provides in relevant part:

> (3) All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of

ninety-five (95) days. The limitations period provided herein shall control and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations which would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

Miss. Code Ann. § 11-46-11(3)(Supp.1998).

¶15. Robinson did not file this action until October 17, 1995, almost 23 months after he was injured and almost more than 11 months after the statute of limitations ran. He argues, however, that a claim does not arise under the statute until the cause of action is discovered. Because he was unaware of the cause of action until he received the September 8, 1995, correspondence from Dr. Winkelmann stating that the cause of the injuries was the therapist's application of the contraindicated treatment and, because the "Discovery Rule" can be implied from the language contained in § 11-46-11(3) stating that the statute of limitations runs 1 year and 95 days from the date of the "otherwise actionable conduct on which the liability phase of the action is based", Robinson argues his claim should not be barred.

¶16. We have recently held that the discovery rule applies to Tort Claims Act actions involving latent injuries, *Barnes v. Singing River Hosp. Sys.*, No. 97-CA-01552-SCT ¶ 20 (Miss. Jan. 21, 1999). However, in another recent Tort Claims Act case, *Chamberlain v. City of Hernando*, 716 So.2d 596, 601 (Miss. 1998), we have also noted that the discovery rule applies to latent injuries and, by definition, has no application to injuries which are not latent.

¶17. The trial court found, and Robinson admits, that he knew of his injuries at the time they occurred. Even viewing the evidence in the light most favorable to Robinson, it is hard to imagine how one could receive second-degree burns while undergoing physical therapy and not suspect negligence on the part of the hospital and the physical therapist. Indeed, Robinson complained to the Singing River staff the packs were too hot the day the burns were received. His burns were treated that day and for months afterwards. Cissel related in his deposition that Robinson threatened legal action the next day, and the Singing River Hospital Quality Care Report prepared after the occurrence contains a summary of the incident by Cissel and notes that the "patient/family" was "angry" and "mad" and made "threats of legal action." Possible legal action was obviously the object of the inquiry by Robinson's attorney when on April 14, 1994, he wrote for medical records regarding injuries sustained in an accident in November, 1993. Robinson might not have known at the time exactly why Singing River's and Cissel's actions caused his injuries, but such specific knowledge was not necessary to his filing an action. *Smith v. Sanders,* 485 So.2d 1051, 1053 (Miss.1986) (*citing United States v. Kubrick*, 444 U.S. 111(1979)). Robinson even claimed *res ipsa loquitur* as a theory of recovery when the complaint was eventually filed.

¶18. In determining when a cause of action accrues under the FELA, this Court had held that:

In cases involving traumatic injury, when the symptoms are immediately manifested so that the employee is aware of the event causing the injury, the cause of action accrues upon the occurrence of the injury, regardless of whether the full extent of the disability is known at that time. *Brassard v. Boston & Main R.R.*, 240 F.2d 138 (1st Cir.1957); *Deer v. New York Central Ry.,* 202 F.2d 625 (7th Cir.1953); *Felix v. Burlington Northern, Inc.,* 355 F. Supp. 1107 (D.Minn.1973). By the same token, with industrial diseases, where the symptoms are not immediately manifested, the cause of action does not accrue until the employee is aware or should be aware of his condition. *Urie*

*v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949);*Young v. Clinchfield R.R.*, 288 F.2d 499 (4th Cir.1961)

*Illinois Central Gulf R.R. v. Boardman*, 431 So.2d 1126, 1128 (Miss.1983)(*quoting Fletcher v. Union Pac. R.R.*, 621 F.2d 902, 906 (8th Cir.1980)).

¶19. On these facts, the discovery rule does not apply because Robinson's injuries were not latent. Robinson knew on November 21, 1993, that he was injured while undergoing treatment by Cissel at Singing River. Therefore, the statute of limitations began running that day with the result that the filing of this suit on October 17, 1995, was untimely. Therefore, this action is barred by the applicable statute of limitations.

## II. THE ALTERATION OF ROBINSON'S MEDICAL RECORDS DOES NOT TOLL THE STATUTE OF LIMITATIONS.

¶20. Robinson alleges that Cissel covered up the cause of the injuries by altering physical therapy treatment notes which were produced in discovery which should have tolled the statute of limitations pursuant to Miss. Code Ann. § 15-1-67 (1995).

¶21. As to the alleged record changes, even in the light most favorable to Robinson, they do not "cover up" the incident. The use of moist heat packs is noted, and a record is made of "blistering" to Robinson's legs. Robinson stresses that he was not aware of the cover up until he reviewed a letter from Dr. Winkelmann dated September 8, 1995, noting he had specifically prescribed ultrasound because of the lack of feeling in Robinson's extremities. Dr. Winkelmann treated Robinson for burns from December, 1993, through November 14, 1994. It is hard to imagine how Robinson would not have had access to, much less not known about, this information, particularly since he had been so vocal to the hospital staff about his alleged mistreatment. Fraudulent concealment by altering medical records, even assuming it did happen, did not hinder Robinson from discovering that he was injured as a result of negligence that took place during physical therapy in November, 1993.

## CONCLUSION

*¶22.* The granting of summary judgment in favor of Singing River Hospital and David Cissel was not error, because this action fails for non-compliance with the statute of limitations provisions of Miss. Code Ann. § 11-46-11(3) (Supp.1998). Accordingly, the judgment of the Jackson County Circuit Court is affirmed.

¶23. **AFFIRMED**.

**PRATHER, C.J., SULLIVAN, P.J., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. PITTMAN, P.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

### McRAE, JUSTICE, DISSENTING:

¶24. The one-year statute of limitations set forth in the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11(3)(Supp. 1998), is a general statute of limitations. Thus, the majority's finding that Robinson's claims

against Singing River Hospital and David Cissel are barred by § 11-46-11 improperly allows a general statute to apply, when, instead, the specific statute of limitations governing medical negligence actions, Miss. Code Ann. § 15-1-36 (Rev. 1995), should be applicable. Today's decision thus widens the gap in remedies available to individuals injured at the hand of state rather than private actors. Accordingly, I dissent.

¶25. It is well-established that specific statutes and rules control over general ones. *Diogenes Editions, Inc. v. Board of Trustees of Institutions of Higher Learning as Trustees for the University of Mississippi*, 700 So. 2d 316, 320 (Miss. 1997); *Lenoir v. Madison County,* 641 So. 2d 1124, 1129-30 (Miss. 1994); *Wilbourn v. Hobson*, 608 So. 2d 187, 1191 (Miss. 1992). Today's decision, however, employs a contrary application, allowing the general tort claims statute to prevail where the specific statute governing medical negligence should be applicable. Not only does this defy established principles of statutory interpretation but it also exacerbates the disparity in remedies available to those who suffer damages as the result of negligence occurring in a public hospital rather than a private hospital.

¶26. An individual who suffers damages as the result of the negligence of "a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor" must file his claim in tort "within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss. Code Ann. § 15-1-36 (1)(Rev. 1995). *See, e.g., Fortenberry v. Memorial Hosp. at Gulfport Inc.*, 676 So. 2d 252 (Miss. 1996). The statute makes no distinction between plaintiffs who have been injured at the hands of medical personnel employed by a private hospital versus those injured in a public or county facility. Where the patient has died, the statute of limitations provides that a wrongful death action may be brought two years from the time of death, without regard for when the deceased might previously have known of the alleged medical negligence. *Gentry v. Wallace*, 606 So. 2d 1117, 1122 (Miss. 1992). These specific statutes have been construed to apply, however, only to those who are fortunate enough to have met with misfortune in a private hospital or as the result of treatment provided by a privately-employed health care provider. When one is admitted, knowingly or unknowingly, to a facility operating under the aegis of any branch of state or local government, a different standard is applicable.

¶27. The medical negligence statute was neither amended nor repealed when Miss. Code Ann. § 11-46-1 et seq. was enacted. Hospital still means "hospital" regardless of whether it is a private entity or a public facility which charges for its services. Section 15-1-36 makes no such distinction. In fact, county hospitals have enjoyed the benefits of the specific two-year statute of limitations for medical negligence claims since its passage in 1982. *See Womble v. Singing River Hosp.,* 618 So. 2d 1252, 1265 (Miss. 1993) (applying two-year statute of limitations in § 15-1-36 (1) in action against county hospital arising from 1986 patient death). Thus, the statute of limitations found in § 15-1-36, covering *specifically* medical negligence claims is applicable and not § 11-46-11, which provides *generally* to all torts.

¶28. Even assuming arguendo that the general one-year statute of limitations enumerated in §11-46-11(3) is applicable, the Tort Claims Act was not effective as to counties until October 1, 1993. Robinson's physical therapy regiment began in September, 1993 and continued through December, 1993. During that time both ultrasound and the hot pack treatments, which caused the burns he suffered on November 21, 1993, were used. There exists a question of fact as whether the treatments given up to that time contributed to his injuries by making the tissue more susceptible to damage. If the burns he suffered were part of a cumulative injury, then we must look to see what law applies, the pre-October two-year statute of limitations or the

post-October 1, 1993, one-year statute the majority contends is applicable.

¶29. Any distinction between the remedies available to those plaintiffs whose damages arose from treatment in a private hospital and those who were treated in a "public" hospital raises equal protection concerns. As distinguished from the private hospital patient who can bring suit at any time within two years after he *discovers* an actionable injury, the statute of limitations easily can run out on a county hospital patient before he even has a reasonable opportunity to discover that he has a cause of action! His ability to recover damages from injuries suffered thus is inequitably abridged.

¶30. As a practical matter, there is no justification for the public/private dichotomy. We no longer operate under the old charity hospital system. Rather, so-called county hospitals and other publicly-funded hospitals are true proprietary enterprises, actively competing in the marketplace with private hospitals for patient, insurance and government dollars with the facilities and services offered. Under our certificate of need system, the existence of a county hospital often serves to keep competition from private hospitals out of the area even though patients do not benefit from lower costs. Many patients are admitted to local hospitals without even knowing the nature of the facility's ownership or that their rights and remedies, should something go wrong, might be predicated upon whether it is a public or private facility. Few patients, too, would know whether their doctor was a private physician operating independently or under contract with the hospital or whether he was an employee of the hospital like nurses, technicians and other medical personnel. The distinction between public and private medical facilities is further blurred when, as in the case of Singing River, a facility owned and operated by the hospital has opened in a neighboring state. At Singing River, too, where the hospital has purchased and now operates a variety of facilities, some personnel at some of its clinics are actually employees of the hospital, while others work under contract with the hospital.

¶31. The operation of a hospital by a city, county or other political subdivision, therefore, is clearly a proprietary function and not a governmental function. *See **Anderson v. Jackson Municipal Airport Authority***, 419 So. 2d 1010, 1014 (Miss. 1982)(governmental functions are those "activities or services which a municipality is required by state law to engage in and to perform," while proprietary functions are "activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not."). Thus, a city, county or "community" hospital should not enjoy the privilege of having those limitations placed upon its liability which generally are accorded only to a political subdivision's governmental functions and enterprises.

¶32. I disagree with the distinction between the statutes of limitation applicable to patients injured in private hospitals and those in publicly-funded hospital. We have an opportunity to correct the present inequities and should make the necessary changes. Accordingly, I dissent.