892 So.2d 284 (2004)
Dennis A. SIMPSON, Appellant,
v.
Dr. Michael H. LOVELACE, The Surgery Consultants of Oxford, P.A. and Baptist Memorial Hospital  North Mississippi, Inc., Appellees.
No. 2003-CA-01154-COA.
Court of Appeals of Mississippi.
November 2, 2004.
Rehearing Denied January 25, 2005.
*285 Janelle Marie Lowrey, Roy O. Parker, Tupelo, Attorneys for Appellant.
S. Duke Goza, Robert S. Mink, Oxford, Shelby Kirk Milam, Attorneys for Appellees.
EN BANC.
IRVING, J., for the Court.
¶ 1. On December 23, 2002, Dennis Simpson filed a medical malpractice action against Dr. Michael Lovelace, the Surgery Consultants of Oxford, John Doe, Jane Doe and ABC Corporation, alleging that Dr. Lovelace negligently operated on his right leg, and as a result, caused him to sustain multiple damages. Shortly thereafter, Simpson amended his complaint to add Baptist Memorial Hospital as a defendant. In response, Dr. Lovelace and the Surgery Consultants of Oxford filed a motion for summary judgment, asserting that the statute of limitations had expired, and thus Simpson's suit was time barred.[1] The trial judge granted the motion, and found that Simpson's complaint was filed beyond the applicable statute of limitations. On appeal, Simpson presents the following issues for review: (1) whether absent a medical expert, he knew or should have known of the negligence performed by Dr. Lovelace and the Surgery Consultants of Oxford, and the causal relationship between the negligent act and the injury, and (2) whether summary judgment was appropriate. Finding no reversible error, we affirm the trial court's grant of summary judgment in favor of the defendants.

FACTS
¶ 2. In August 1998, Dr. Lovelace admitted Simpson to Baptist Memorial Hospital in Oxford for an operation involving the removal of veins from his right leg.[2] Simpson returned for follow-up visits with Dr. Lovelace on September 8 and September 15, 1998.
¶ 3. In September 2001, Simpson met with Dr. Frank Nichols at the wound care *286 center in Tupelo for treatment of ulcers on his right leg. Simpson informed Dr. Nichols that the ulcers had been on his leg for approximately fourteen months, and was caused by a vein protruding through his skin. Dr. Nichols noted in his medical report that "the patient complained of experiencing pain, swelling and tingling, burning and some numbness in the right leg since 1998." The following month, Dr. Nichols performed a venogram on Simpson's leg. Simpson claims that at his follow-up visit on October 12, 2001, Dr. Nichols informed him that the results of the venogram revealed that Dr. Lovelace had failed to properly remove the veins in his right leg, specifically that Dr. Lovelace did not properly hook up the veins below his knee and should have removed the veins above his knee. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review
¶ 4. The law is well established with respect to the grant or denial of summary judgments. A summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." Lowery v. Guaranty Bank and Trust Company, 592 So.2d 79, 81 (Miss.1991) (citing Galloway v. Travelers Ins. Co., 515 So.2d 678, 682 (Miss.1987)). "In determining whether the entry of summary judgment [is] appropriate, [the appellate court] reviews the judgment de novo, making its own determination on the motion, separate and apart from that of the trial court." Lowery, 592 So.2d at 81. "The evidentiary matters are viewed in the light most favorable to the nonmoving party." Id."If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is affirmed, but if after examining the evidentiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed." Lowery, 592 So.2d at 81 (citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990)).

Simpson's Knowledge of the Injury
¶ 5. Simpson contends that he did not become aware that he had an actionable injury until October 12, 2001, when Dr. Nichols informed him of Dr. Lovelace's alleged negligence. He maintains that as a result, the statute of limitations began to run on that particular date.
¶ 6. Dr. Lovelace and the other defendants, however, contend that since Simpson knew that there was a problem with his leg in 1998, the statute of limitations began to run at that time. Dr. Lovelace further maintains that since Simpson's injury was not latent, he had until August 28, 2000, to file a claim.
¶ 7. Mississippi Code Ann. section 15-1-36 (Rev.2003), which governs medical malpractice claims, states in pertinent part as follows:
No claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable *287 diligence might have been first known or discovered ...
¶ 8. "The two-year statute of limitations does not commence running until the patient discovers or should have discovered that he has a cause of action." Smith v. Sanders, 485 So.2d 1051,1052 (Miss.1986) (citing Pittman v. Hodges, 462 So.2d 330, 332-334 (Miss.1984)). "The operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." Sanders, 485 So.2d at 1052.
¶ 9. Here, Smith did not file his action until December 23, 2002, more than four years after his surgery. The trial court found that Simpson's suit clearly exceeded the time provided for in the statute. We agree. Although Simpson claims that he did not discover Dr. Lovelace's negligence until informed by Dr. Nichols, we find that the record is clear that Simpson complained of problems immediately after his surgery in 1998 that should have put him on notice that there was a problem. Dr. Nichols noted in his physician report that Simpson had complained of numbness in his right leg since 1998, and Simpson even admitted in a pleading filed in response to Dr. Lovelace's motion for summary judgment that:
From the date of the operation through September, 2001, Plaintiff suffered from pain, swelling, numbness and ulcers on his right leg at the site of the surgery. In September, 2001, while being treated at the Wound Center in Tupelo, Mississippi for the symptoms listed above, Plaintiff met Dr. Frank Nichols. Plaintiff explained the problems he had been having since the vein stripping surgery to Dr. Nichols and subsequently had an office consultation with Dr. Nichols on September 18, 2001.
¶ 10. While Simpson may not have been made specifically aware of the medical problem until Dr. Nichols advised him in October 2001, we are not persuaded that his late knowledge of the specifics of his injuries is sufficient to toll the running of the statute of limitations. Simpson knew from the very beginning, following the procedure performed by Dr. Lovelace, that something was not quite right. As previously observed, he suffered constant pain, swelling, and numbness at the site of the surgery. Therefore, since he chose to ignore the problem and thereby not discover the specific reasons for his pain, swelling and numbness which were recurrent at the cite of the surgery performed by Dr. Lovelace, we hold that the discovery rule does not apply. See Robinson v. Singing River Hospital System, 732 So.2d 204, 208 (¶¶ 17-19) (Miss.1999) (holding that the discovery rule does not apply where the plaintiff knew he had received second-degree burns while undergoing physical therapy even though he did not become aware that the burns were the result of a physical therapy treatment).
¶ 11. In our judgment, this case bears a striking resemblance to Robinson. There, the supreme court found that the plaintiff's injuries were not latent. Likewise, we find that Simpson's injuries were not latent. It is hard to imagine how Simpson could have continual pain, swelling, and numbness at the site of the surgery performed by Dr. Lovelace and not suspect negligence in the performance of the surgery.
¶ 12. The dissent, citing Schiro v. American Tobacco Co., 611 So.2d 962, 964 (Miss.1992) and Cannon v. Mid-South X-Ray Co., 738 So.2d 274, 276-77(¶ 13) (1999), attempts to distinguish Robinson by asserting (1) that knowledge of an injury does not commence the running of the statute of limitations, (2) the statute of limitations commences to run upon the *288 discovery of an injury, and that discovery is an issue of fact decided by a jury where there is a genuine dispute, and (3) Simpson was unaware of Dr. Lovelace's negligence.
¶ 13. First, neither case cited by the dissent is a medical negligence case. In medical cases such as this one, suit must be commenced within "two (2) years from the date of the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss.Code Ann. § 15-1-36(2) (Rev.2003). (emphasis added). Clearly the suit here was initiated beyond two years following the date of Simpson's surgery. Therefore, if Simpson is to prevail he must show that he, using reasonable diligence, could not have discovered Dr. Lovelace's negligence. We agree with the dissent that "discovery is an issue of fact decided by a jury where there is a genuine dispute." However, here, there is no dispute, much less a genuine dispute, on the issue of Simpson's diligence to discover. Simpson did nothing to discover; therefore, there is no issue to be resolved by the jury regarding the reasonableness of Simpson's acts or efforts to discover. We also agree with the dissent that the problems which Simpson experienced at the site of the surgery immediately after the surgery do not show or prove that Simpson "should have known that the injury was caused by Dr. Lovelace's alleged malpractice." However, what they do show or prove is that there was a basis for the initiation of reasonable diligence on Simpson's part such that might have allowed him to discover Dr. Lovelace's alleged acts of negligence.
¶ 14. On these facts, we find that Dr. Lovelace's alleged acts of negligence might have been discovered within the two-year time limit had Simpson engaged in due diligence to discover such and that he had a reasonable basis to initiate that diligence which he failed to do. Had he done so he likely would have acquired knowledge of the injury, the cause of the injury, and the causative relationship between the injury and the conduct of Dr. Lovelace. For the forgoing reasons, we find that Simpson's suit is barred by the applicable two-year statute of limitations. As a result, the trial judge did not err in granting the defendants' motions for summary judgment.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CHANDLER, J., DISSENT WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, P.J.
CHANDLER, J., Dissenting.
¶ 16. Because I believe that Dr. Lovelace failed to meet his burden of proof in establishing that Dennis Simpson reasonably should have known that his injuries were the result of an alleged medical malpractice, I respectfully dissent.
¶ 17. I begin this discussion by noting our standard of review in summary judgment cases. Summary judgment should be granted only when "there is no genuine issue as to any material fact." Miss. R. Civ. P. 56(c). We review a trial court's grant of summary judgment de novo, and we view the evidence in a light most favorable to the non-moving party, Dennis Simpson. Russell v. Orr, 700 So.2d 619, 622(¶ 8) (Miss.1997). An application of the statute of limitations is also an issue to which the de novo standard applies. ABC Mfg. Corp. v. Doyle, 749 So.2d 43, 45(¶ 10) (Miss.1999). "When doubt exists whether there is a fact issue, the non-moving party against whom the Summary Judgment has *289 been brought should be given the benefit of every reasonable doubt." Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983). "If there should be error, it should be denying the Summary Judgment in favor of a full live trial." Id. at 363.
¶ 18. In a summary judgment motion, when the moving party has proven that he is entitled to summary judgment, the non-moving party must rebut by showing that there are indeed genuine issues for trial. The non-moving party must offer affidavits or other evidence that are (1)sworn (2) made upon personal knowledge and (3) made by a person competent to testify. Drummond v. Buckley, 627 So.2d 264, 267 (Miss.1993). I believe that Simpson has successfully rebutted Dr. Lovelace's showing that he is entitled to summary judgment. Simpson produced a sworn affidavit stating that, based on his personal knowledge, he was unaware of Dr. Lovelace's malpractice until October 12, 2001, when he had his consultation with Dr. Nichols. I believe that this affidavit was sufficient to create a genuine issue of fact.
¶ 19. When there is a genuine factual dispute, as opposed to a question of law, the question of whether a party is entitled to summary judgment should be decided by a jury, not a judge. "Occasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." Smith v. Sanders, 485 So.2d 1051, 1053 (Miss.1986). I believe that this is a case in which reasonable minds can differ as to when Simpson should have known that his injuries were caused by Dr. Lovelace's alleged medical malpractice.
¶ 20. The Mississippi Supreme Court held that there are three specific elements a plaintiff must be aware of before the statute of limitations begins to run in a medical malpractice case. These elements consist of: (1) knowledge of an injury; (2) the cause of the injury and (3) the causative relationship between the injury and the conduct of the medical practitioner. Sanders, 485 So.2d at 1053. In this case, Dr. Lovelace has proven only that Simpson had knowledge of the injury in 1998. Dr. Lovelace's argument is that the severity of his pains should have put him on notice that the surgery was defective. The proof Dr. Lovelace presented is that Simpson experienced problems with the site of the surgery immediately after being discharged from the hospital, that he was put on notice because he was present when the treatment was conducted, and that he failed to pursue the claims because he failed to consult with doctors despite his severe pains. I fail to see how this proof conclusively shows that he should have known that the injury was caused by Dr. Lovelace's alleged malpractice.
¶ 21. In order for the statute of limitations to have been tolled, Simpson must have understood the connection between his injuries and the conduct of the defendant. Dr. Lovelace's procedures of removing varicose veins would be painful even if the surgery had been correctly performed. To a layperson, who has every reason to give his surgeon the benefit of the doubt, it may not be obvious that his injuries would create a suspicion of negligent conduct. Even though it may have been unwise of Simpson to have failed to follow up with medical treatment in 1999 and 2000, I believe that his failure to seek such treatment does not necessarily translate to a lack of diligence in pursuing his legal claims.
¶ 22. The Mississippi Supreme Court has held that the statute of limitations commences upon discovery of an injury, and that discovery is an issue of fact decided *290 by a jury where there is a genuine dispute. Schiro v. American Tobacco Co., 611 So.2d 962, 964 (Miss.1992). In Schiro, the court recognized that Schiro knew she had sustained some type of injury within six years of the detection of lung disease. Id. at 965. However, since the cancer had not been medically diagnosed, Schiro did not know what her actual injury was; therefore, any suit she brought would have been premature. Id. In Cannon v. Mid-South X-Ray Company, 738 So.2d 274, 276-77(¶ 13), this Court denied summary judgment brought by Cannon's former employer, a chemical manufacturer. Mid-South X-Ray Company contended that Cannon should have been charged with discovery of her injuries from the time she sought treatment for her illnesses. We rejected this contention because we believed that it required the diagnosis of a medical doctor to establish a connection between her workplace and her resulting illnesses. Id. at 277(¶ 14). Similarly, in this case, while Simpson experienced pain after the surgery and knew there was something unusual about the type of pain he was having, he had no reason to know that his pain was the result of Dr. Lovelace's failure to perform the surgery correctly. A jury can reasonably find that he did not have a concrete claim for malpractice until that moment in time that he was informed that Dr. Lovelace had performed the surgery incorrectly.
¶ 23. To prove that Simpson should have been aware that Dr. Lovelace committed malpractice long before October 12, 2001, the majority focuses on Robinson v. Singing River Hospital, 732 So.2d 204 (Miss.1999). This case is distinguishable from Robinson because the plaintiff in Robinson was immediately aware of the doctor's malpractice. Robinson was awake and was aware that he had sustained burns in physical therapy. The Mississippi Supreme Court granted summary judgment because Robinson's knowledge that the injuries were caused by the hospital was obvious: "The trial court found, and Robinson admits, that he knew of his injuries at the time they occurred. Even viewing the evidence in the light most favorable to Robinson, it is hard to imagine how one could receive second-degree burns while undergoing physical therapy and not suspect negligence on the part of the hospital and the physical therapist. Indeed, Robinson complained to the Singing River staff the packs were too hot the day the burns were received." Id. at 208(¶ 17). In this case, Simpson was unconscious while Dr. Lovelace performed surgery on him. Therefore, it was not immediately obvious to Simpson that he had a malpractice claim.
¶ 24. Ostensibly, Robinson bears important similarities to this case. After all, the Mississippi Supreme Court rejected Robinson's contentions that he was unaware of a medical malpractice claim until after he received correspondence from a doctor that his injuries were the result of his therapy treatments he received at the hospital. Id. at 206(¶ 7). However, the court rejected this argument because the facts showed that he hired an attorney five months after his treatment to pursue a possible claim against the hospital. In other words, he actually knew that he had a claim against the hospital, despite his statement to the contrary. Id. at 206(¶ 8). In this case, there is no evidence showing that Simpson knew that he had a possible claim against Dr. Lovelace until October 12, 2001.
¶ 25. I believe that there is a genuine dispute as to when Simpson should have reasonably discovered that his injuries were caused by medical malpractice. This dispute should be decided by a jury. I *291 would reverse the circuit court and deny summary judgment.
BRIDGES, P.J., JOINS THIS SEPARATE OPINION.
NOTES
[1] The trial court permitted Baptist Memorial Hospital to join the other defendants' motion for summary judgment.
[2] The actual surgery occurred on August 28, 1998.