# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-01130-SCT

*TOMAS FLORES, M.D.*

*v.*

*MARLA ELMER, INDIVIDUALLY,*
*AND AS PARENT AND NEXT FRIEND OF*
*GIGI ELMER, A MINOR*

DATE OF JUDGMENT: 05/25/2005
TRIAL JUDGE: HON. JERRY O. TERRY, SR.
COURT FROM WHICH APPEALED: HANCOCK COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: STEPHEN G. PERESICH
MELINDA O. JOHNSON
ATTORNEY FOR APPELLEE: DAVID R. DANIELS
NATURE OF THE CASE: CIVIL - MEDICAL MALPRACTICE
DISPOSITION: AFFIRMED AND REMANDED - 09/07/2006
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This interlocutory appeal involves issues pertaining to the discovery rule as it relates to medical malpractice. Finding that there are genuine issues of fact that remain after reviewing the evidence, we affirm the circuit court's denial of summary judgment and remand for further proceedings.

¶2.     Marla Elmer, individually, and as a parent and next friend of Gigi Elmer, a minor, filed a complaint against Tomas R. Flores, M. D., alleging medical malpractice. Dr. Flores filed a motion for summary judgment asking the Hancock County Circuit Court to dismiss the action

based on the two-year statute of limitations. The circuit court, denying the motion for summary judgment, found that genuine factual issues existed which precluded a grant of summary judgment. Dr. Flores filed a motion petitioning the circuit court to reconsider its denial of summary judgment based on a newly issued Court of Appeals case, ***Simpson v. Lovelace***, 892 So. 2d 284 (Miss. Ct. App. 2004). Dr. Flores's motion was denied, and we then granted him permission to bring this interlocutory appeal. *See* M.R.A.P. 5.

**FACTS**

¶3. Dr. Flores performed surgery on Gigi Elmer to treat her broken arm. After that initial surgery, Gigi was able to move her thumb and fingers and had normal hand function. Subsequent x-rays showed that Gigi's bones appeared to be touching at an angle, so Dr. Flores operated again on August 22, 1992, one week following the first surgery. The second surgery was designed to plate the bones together and make certain Gigi's bones would heal properly. After the second surgery, Gigi was in pain and could barely move her fingers. When she left the hospital, her "thumb and fingers didn't work."

¶4. Gigi continued to visit Dr. Flores for follow-up visits,[1] during which she regularly expressed concern over the problems she was having with her thumbs and fingers. Dr. Flores continuously assured her that everything was fine and that "these things take time to heal." Marla Elmer was concerned that Gigi's arm failed to progress and tried to get Dr. Flores to refer Gigi to a specialist. When Dr. Flores would not help her, Marla secured an appointment with Jefferson Kaye, M.D., at Ochsner Orthopaedic Clinic.

---

[1]According to appellant's written briefs, Gigi saw Dr. Flores as late as April 22, 1994, 21 months after surgery.

¶5. Dr. Kaye performed surgery on Gigi on October 18, 1994.[2] During that surgery, Dr. Kaye discovered that Gigi's posterior interosseous nerve (PIN) was wrapped around one of the screws that was pinning the plate to the bone. The Elmers filed a medical malpractice lawsuit against Dr. Flores on September 27, 1996, alleging that Dr. Flores negligently implanted the plate. Dr. Flores filed a motion for summary judgment alleging that the Elmers' complaint was time barred because it was filed after the two-year medical malpractice statute of limitations had expired. The Elmers assert that the discovery rule applies because they were not aware that Dr. Flores was negligent until Dr. Kaye's surgery and that they acted diligently based on Dr. Flores's repeated assertions that the recovery process was on track.

¶6. The circuit court held that it was unable to say as a matter of law that the malpractice was due to Dr. Flores's negligence until Dr. Kaye discovered the reason for Gigi's pain and denied Dr. Flores's motion for summary judgment. From this ruling, Dr. Flores appeals.

### DISCUSSION

¶7. The court applies a de novo standard of review when examining a trial court's grant or denial of summary judgment. All that is needed for a nonmoving party to survive a motion for summary judgment is to demonstrate that a genuine issue of material fact exists. ***PPG Architectural Finishes, Inc. v. Lowery***, 909 So. 2d 47 (Miss. 2005); ***Lowery v. Guar. Bank &***

---

[2]Dr. Kaye saw Gigi on September 14, 1994. He could not diagnose Gigi based on her symptoms alone, so he ordered a nerve conduction velocity test. His notes disclose that the cause of injury was unclear. He noted "possible muscle adherence, possible tendon adherence, possible muscle or tendon rupture, possible posterior interosseous nerve dysfunction" and "possible surgery for exploration and removal of hardware, possible nerve exploration." The nerve conduction test revealed evidence of nerve palsy. Dr. Kaye decided surgery was the best option to determine the cause of the palsy.

***Trust Co.***, 592 So. 2d 79, 81 (Miss. 1991); ***Galloway v. Travelers Ins. Co.,*** 515 So. 2d 678, 682 (Miss. 1987). The evidence is viewed in the light most favorable to the nonmoving party. ***McKinley v. Lamar Bank***, 919 So. 2d 918, 926 (Miss. 2005).

I.      **GENUINE ISSUES OF MATERIAL FACT**

¶8.     Section 15-1-36 of the Mississippi Code provides a two-year statute of limitations for medical malpractice claims. Miss. Code Ann. § 15-1-36 (Rev. 2003). That statute of limitations is, however, subject to a discovery rule. ***Wright v. Quesnel***, 876 So. 2d 362, 366 (Miss. 2004). The two-year statute does not begin to run until the patient discovers or should have discovered that he has a cause of action. ***Smith v. Sanders***, 485 So. 2d 1051, 1052 (Miss. 1986). In other words, "the operative time [for the running of the statute of limitations] is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." ***Sarris v. Smith***, 782 So. 2d 721, 725 (Miss. 2001). The focus is on the time that the patient discovers, or should have discovered through reasonable diligence, that he or she probably has an actionable injury. ***Wright***, 876 So. 2d at 366 (citing ***Wayne Gen. Hosp. v. Hayes***, 868 So. 2d 997, 1001 (Miss. 2004)). The discovery rule tolls the statute of limitations until the plaintiff knew or should have known of some negligent conduct, regardless of whether the plaintiff knows with absolute certainty that the conduct was legally negligent. ***Id***.

¶9.     The discovery rule protects plaintiffs with latent injuries. ***Wright***, 876 So. 2d at 366. A latent injury precludes the plaintiff from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic

4

to expect a layman to perceive the injury at the time of the wrongful act." *Lowery*, 909 So. 2d at 50 (quoting ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 168 (Miss. 1999)).

¶10.    A layperson undergoing a surgical procedure trusts in and relies on the instructions, professional expertise and guidance of their physician.   Dr. Flores examined Gigi's hand on eight separate occasions following the surgery.   He told her "everything was all right and normal" and "these things don't happen overnight."   Based on these statements, it is hard to conclude *as a matter of law* that Gigi did not act diligently by trusting her surgeon's opinion and waiting over two years before consulting a specialist.   It is reasonable to assume that a person in Gigi's circumstances might rely on the advice of the surgeon and think that the recovery was on-track rather than discovering the source of the alleged malpractice.

¶11.    Two cases from other states show that it is reasonable for a patient to rely upon his or her physician's advice: First, in ***Burns v. Bell***, 409 A.2d 614 (D.C. 1979), after she underwent a facelift, Burns became concerned that the scars did not disappear and that she experienced numbness and a pins-and-needles sensation around the surgical area.   When she stated her concerns on numerous occasions to Dr. Bell, he assured her that these symptoms would improve with time.   Incredibly, even though her symptoms did not disappear, Burns underwent another plastic surgery performed by Dr. Bell and referred a friend to Dr. Bell.   Burns stated, "Throughout this period of time, I had complete trust in Dr. Bell and that if I would only be patient, everything would turn out to be all right.   My response in each instance to Dr. Bell's assurances was an acquiescence in [his] judgment." ***Id.*** at 614.   After suit was filed against him, Dr. Bell moved for summary judgment based on the running of the statute of limitations.

Reversing the trial court's grant of summary judgment, the District of Columbia Court of Appeals held as follows:

> [Dr. Bell] contends that [Burns] knew of her injury soon after the operation. It is argued that she could see for herself the condition of her face. This approach overlooks the fact that [Burns] may have relied upon [Dr. Bell] because she herself had no medical expertise and no other accurate way of knowing whether the assurances given her were reasonable. To require a patient to scrutinize to a fine degree the advice given by a treating physician, at the risk of losing his right to legal redress seems unwise. Thus the determination of when [Burns] should have reasonably discovered her injury under the instant circumstances is, in our view, a question of fact and should have been submitted to the trier of fact.

*Id.* at 617.

¶12. The ***Burns*** court relied on a Texas case, ***Fitzpatrick v. Marlowe***, 553 S.W.2d 190 (Tex. 1977), with remarkably similar facts which involved plastic surgery on the patient's nose. In *Fitzpatrick* the court stated as follows:

> As to the negligent treatment count, what was necessary for plaintiff to discover was not that her nose had a depression in it and redness, but that the depression and redness were caused by the manner the operation was performed and would not heal. . . . Under the evidence, we deem that whether she should have discovered [negligence] sooner is a fact issue for the trier of fact to determine from the evidence.

*Id.* at 195.

¶13. Dr. Flores relies on ***Simpson v. Lovelace***, 892 So. 2d 284 (Miss. Ct. App. 2004), and ***Robinson v. Singing River Hospital System***, 732 So. 2d 204 (Miss. 1999), to claim that Gigi's injury was not latent and the discovery rule should not apply. However, his reliance is misguided because the facts in these cases are substantially different from the instant case.

In ***Robinson,*** the injured party received second-degree burns by the application of heating packs during a physical therapy session. ***Id.*** at 206. Robinson was awake and aware of his injury the day it occurred. ***Id***. at 208. He threatened legal action on the very day the burns occurred. ***Id***. Therefore, the Court concluded that he was put on notice the day the alleged malpractice occurred and his cause of action was time-barred. ***Id.***

¶14. Conversely, Gigi Elmer's PIN nerve was wrapped around a screw implanted in her arm. There were no visible marks or other signs. Though she had pain, she did not know the actual source of that pain until Dr. Kaye found the nerve-wrapped screw. Even Dr. Kaye could not pinpoint the source of Gigi's problems based on her symptoms alone, he had to surgically operate on her to locate the entrapped nerve.

¶15. ***Simpson*** is distinguishable because the patient made no attempt to discover the origin of his pain after leg surgery. Simpson attended two surgical follow-up appointments in the two weeks following his surgery, but made no other visits with his surgeon to complain about pain. ***Simpson***, 892 So. 2d at 285. Three years later, after observing ulcers and protruding veins in his leg, he asserted that he had suffered pain, swelling, tingling, burning and some numbness in his leg since the surgery. ***Id***. at 286. The Court of Appeals held that because Simpson did nothing to discover his doctor's negligence, there was "no issue to be resolved by the jury regarding the reasonableness of Simpson's acts or attempts to discover." ***Id***. at 288.

¶16. Gigi's eight visits to Dr. Flores with repeated complaints about pain and loss of function in her fingers certainly qualifies as doing "something" to discover the origin of her pain. While the eight visits do not provide a definitive answer as to reasonableness, they do make

the issue of due diligence a fact issue to be resolved by the jury. Accordingly, the court did not err in denying summary judgment.

## II. FRAUDULENT CONCEALMENT

¶17. The Elmers allege that Dr. Flores "concealed or obscured" the actionable injury caused by his own malpractice. "Fraudulent concealment of a cause of action tolls its statute of limitations." *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000) (quoting *Myers v. Guardian Life Ins. Co. of Am., Inc.*, 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998)). Given our disposition of the first issue, there is no need to address this issue.

## CONCLUSION

¶18. The circuit court did not err in denying summary judgment in this case. Because there are genuine issues of fact that remain after reviewing the evidence as to when the Elmers should have reasonably known that they had a cause of action against Dr. Flores due to the circumstances regarding Gigi's recovery, the Elmers are entitled to a trial on the merits of their claim. We affirm the circuit court's denial of Dr. Flores's motion for summary judgment, and we remand this case to the trial court for further proceedings consistent with this opinion.

¶19. **AFFIRMED AND REMANDED.**

    **SMITH, C.J., COBB, P.J., DIAZ, EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**