# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00349-SCT

*SPENCER IVY, ON BEHALF OF HIMSELF AND*
*THE OTHER WRONGFUL DEATH*
*BENEFICIARIES OF CHARLENE IVY*

*v.*

*EAST MISSISSIPPI STATE HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2015 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| TRIAL COURT ATTORNEYS: | JAMES M. PRIEST, JR. |
| | JEANNIE HOGAN SANSING |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL McCARTY |
| | JAMES M. PRIEST, JR. |
| ATTORNEY FOR APPELLEE: | JEANNIE HOGAN SANSING |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 05/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    The definitive question in this appeal is if the Director of the East Mississippi State Hospital ("EMSH")[1] is the proper "chief executive officer" for notice purposes under the Mississippi Tort Claims Act ("MTCA"), as opposed to the Executive Director of the

---

[1]EMSH is a "state psychiatric hospital and institution," established in 1882. *See* Miss. Code Ann. § 41-17-3 (Rev. 2013).

Department of Mental Health ("DMH"). We find that EMSH's Director is the CEO under the MTCA, and we therefore reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. According to the complaint in this case, Charlene Ivy was admitted to EMSH on May 11, 2012, and she died on July 17, 2012. Alleging medical negligence by EMSH staff, Ivy's son Spencer sent a Notice of Claim letter via certified mail dated July 11, 2013, to EMSH Director Charles Carlisle. Carlisle signed for the letter on July 15, 2013, as evidenced by the return receipt.

¶3. Ivy then filed a wrongful-death suit against EMSH on January 2, 2014. EMSH filed a motion to dismiss along with its answer and argued that Ivy had not complied with the MTCA notice requirements because he had not provided notice to the "chief executive officer of the State Department of Mental Health." Citing Mississippi Code Section 41-4-11(2),[2] EMSH argued that it was "subject to the jurisdiction and control of the State Department of Mental Health." As such, EMSH argued, "[p]roper service of the Notice of Claim could only be had on the Executive Director, who had been appointed to serve the Board [of Mental Health] and the DMH, and to head the administrative services at the DMH Central Office," and that Ivy improperly served presuit notice "on Charles Carlisle, the facility director [of] EMSH, not on the Executive Director of the entity charged with the control of EMSH."

---

[2]"As of July 1, 1974 . . . the East Mississippi State Hospital at Meridian . . . and any other mental or intellectual disability facility that may be established, shall become subject to the jurisdiction and control of the State Department of Mental Health." Miss. Code Ann. § 41-4-11(2) (Rev. 2013).

2

¶4.   Ivy responded and argued that Section 11-46-1(j) listed "hospital" as an entity that constitutes the "State" for MTCA purposes. Ivy also argued that EMSH exists separate and apart from the DMH. After a hearing, the trial judge agreed with EMSH and dismissed Ivy's suit with prejudice. The trial judge found that EMSH was "not a separate state entity subject to liability and damages apart from DMH," and that it was a "specialized institution under the direction and control of [DMH]." As such, the trial judge said, "proper pre-suit notice" required service "upon the executive director of [DMH], not a facility manager of one of the institutions under its jurisdiction and control." The trial judge found further that the statute of limitations was not tolled because Ivy had "failed to comply with the mandatory provisions of Section 11-46-11(1)" and dismissed Ivy's complaint with prejudice.

¶5.   Ivy now appeals to this Court and raises several issues. But we address Ivy's first issue only, which we find dispositive: Whether Carlisle legally was the correct person to serve with notice.

## DISCUSSION

¶6.   The MTCA's application is a question of law which this Court reviews *de novo*. ***Tallahatchie Gen. Hosp. v. Howe***, 154 So. 3d 29, 31 (Miss. 2015). And this Court also reviews *de novo* a trial judge's grant or denial of a motion to dismiss. ***Id.***

¶7.   "The basic principle of sovereign immunity is that the 'king can do no wrong.'" ***Id.*** (citations omitted). "So the 'State is free from any liabilities unless it carves an exception,' and these exceptions are found in tort claims acts." ***Id.*** (citations omitted). In Mississippi, through the MTCA provisions, the State has waived its immunity and the immunity of its

3

political subdivisions "from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]" *Id.* (citing Miss. Code Ann. § 11-46-5(1) (Rev. 2012)). "The MTCA provides the exclusive civil cause of action against a governmental entity, and 'any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under [the MTCA] shall be brought only under the provisions of [the MTCA].'" *Id.* (citing Miss. Code Ann. § 11-46-7(1) (Rev. 2012)).

¶8.    "Specifically, a plaintiff suing a governmental entity 'must file a notice of claim with the *chief executive officer of the governmental entity*' at least ninety days before filing his or her complaint." *Id.* (citing Miss. Code Ann. § 11-46-11(1) (Rev. 2012)) (emphasis added). And if the governmental entity "to be sued is a *state entity* as defined in Section 11-46-1(j) . . . service of notice of claim shall be had only upon that entity's . . . chief executive officer." Miss. Code Ann. § 11-46-11(2)(a)(ii) (Rev. 2012) (emphasis added). Section 11-46-1(j), in turn, defines "State" as "the State of Mississippi and any office, department, agency, division, bureau, commission, board, institution, *hospital*, college, university, airport authority or other instrumentality thereof, *whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.*" Miss. Code Ann. § 11-46-1(j) (Supp. 2015) (emphasis added).

¶9.    Ivy argues that Carlisle was the "legally correct person to serve." He points out that EMSH is a "creature of statute," "established for the care and treatment of persons with

4

mental illness, free of charge, except as otherwise provided." *See* Miss. Code Ann. § 41-17-1 (Rev. 2013).[3] He argues further that the Legislature specifically has declared that EMSH is a separate entity under the law: "The state psychiatric hospital and institution established at Meridian by the Act of March 8, 1882, *shall continue to exist as a body politic and corporate*, under the name of the 'East Mississippi State Hospital,' with all the privileges conferred and the duties enjoined by law." Miss. Code Ann. § 41-17-3 (Rev. 2013) (emphasis added). So in essence, Ivy argues that, because EMSH exists separately from the DMH, it is the "state entity" being sued, and Carlisle was the proper party to notify. We agree.

¶10. As detailed above, a plaintiff suing a governmental entity "must file a notice of claim with the *chief executive officer of the governmental entity*" at least ninety days before filing his or her complaint. Miss. Code Ann. § 11-46-11(1) (Rev. 2012) (emphasis added). And if the "governmental entity" to be sued is a "state entity" as defined in Section 11-46-1(j), service of notice of claim shall be had only upon *that entity's . . .* chief executive officer." Miss. Code Ann. § 11-46-11(2)(a)(ii) (Rev. 2012) (emphasis added). Section 11-46-1(j), in turn, defines "State" as "the State of Mississippi and any . . . *hospital . . .* or other instrumentality thereof, *whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.*" Miss. Code Ann. § 11-46-1(j) (Supp. 2015) (emphasis added). Thus, based on the plain language of the MTCA statutes and the Title 41

---

[3]Notably, this statute initially was codified by the Legislature in 1892.

statutes discussed above, we find that the "state entity" here is EMSH, and that its CEO is Charles Carlisle.[4]

¶11.    This Court addressed a similar issue in ***Harris v. Mississippi Valley State University***, 873 So. 2d 970 (Miss. 2004).  There, Rosetta Harris sued her former employer, MVSU, for wrongful termination and several other claims.  ***Id.*** at 976.  Harris argued that she had "substantially complied" with the MTCA's notice provisions, because she had filed a grievance with the Board of Trustees of the IHL.  ***Id.*** at 988.  But this Court rejected that argument, finding that "[t]he MTCA's definition of state entities includes colleges and universities. Miss. Code Ann. § 11-46-11(j).  Therefore, the President of MVSU is the chief executive officer of the university.  IHL is not a substitute for the President of MVSU." ***Id.*** at 988.  The same is true here; Section 11-46-11(j)'s definition of "State" includes hospitals, and the DMH is not a substitute for EMSH's CEO.

¶12.    EMSH argues strenuously that it is merely a DMH "facility," and that the only CEO contemplated in the statutes is the Executive Director of DMH.  It cites several statutes to support its argument, including Section 41-4-2[5] and Section 41-4-11(2).[6]  But we are not

_____

[4]EMSH does not argue that another person besides Carlisle is its CEO and should have been notified at EMSH; rather, it argues that it *cannot have* a CEO for MTCA purposes, because it is merely a part of the DMH.

[5]"The purpose of [the Mental Health Reform Act of 2011] is to coordinate, develop, improve, plan for, and provide all services for persons of this state with mental illness, emotional disturbance, alcoholism, drug dependence, and an intellectual disability; to promote, safeguard and protect human dignity, social well-being and general welfare of these persons *under the cohesive control of one (1) coordinating and responsible agency* so that mental health and intellectual disability services and facilities may be uniformly provided more efficiently and economically to any resident of the State of Mississippi; and further to seek means for the prevention of these disabilities."  Miss. Code Ann. § 41-4-2

6

convinced that these statutes somehow render EMSH a mere facility of the DMH; indeed, the Legislature established EMSH in 1882. Stated differently, simply because the Legislature has since given the DMH authority over EMSH does not mean that EMSH has been subsumed by the DMH and is no longer a "state entity."

¶13.   But perhaps more importantly, EMSH's position is not supported by the MTCA's plain language, as detailed above. The statutory phrase used is "state entity," *not* "state agency." So EMSH's argument that presuit notice must "be served on the chief executive officer *of a state agency*" is simply incorrect. As such, we reverse the trial court's order dismissing the case and remand for proceedings consistent with this opinion.

## CONCLUSION

¶14.   Charles Carlisle is EMSH's—the "state entity's"—CEO under the MTCA. And because Ivy provided presuit notice to the proper party, the trial judge erred when he dismissed Ivy's complaint with prejudice. We therefore reverse the judgment of the Lauderdale County Circuit Court and remand this case for proceedings consistent with this opinion.

¶15.   **REVERSED AND REMANDED**.

　　　**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**

---

(Rev. 2013) (emphasis added).

[6]"As of July 1, 1974, the Mississippi State Hospital at Whitfield, the East Mississippi State Hospital at Meridian, the Ellisville State School at Ellisville, the North Mississippi Regional Center at Oxford, and any other mental or intellectual disability facility that may be established, shall become *subject to the jurisdiction and control of the State Department of Mental Health*." Miss. Code Ann. § 41-4-11(2) (Rev. 2013) (emphasis added).

7