# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-IA-00030-SCT

*UNIVERSITY OF MISSISSIPPI MEDICAL
CENTER*

*v.*

*JACKIE AYCOCK AND DEBRA AYCOCK*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2021 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WHITMAN B. JOHNSON, III |
| ATTORNEYS FOR APPELLEES: | CAREY R. VARNADO |
| | MATTHEW WILLIAM LAWRENCE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED AND REMANDED - 08/17/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     On March 8, 2021, Plaintiffs Jackie and Debra Aycock sued the University of Mississippi Medical Center for medical negligence in the Hinds County Circuit Court, alleging injuries Jackie suffered occurred as a result of the hospital's negligence. The medical center sought summary judgment seeking dismissal of the negligence action based on the Aycocks' failure to serve its chief executive officer with their notice of claim as required by Mississippi Code Section 11-46-11(2)(a)(ii) (Rev. 2019). The hospital argued that the Aycocks' failure to serve proper notice resulted in the running of the one-year statute of limitations under Mississippi Code Section 11-46-11(3)(a) (Rev. 2019). The circuit court denied summary judgment, finding that genuine issues of material fact existed. The hospital

now appeals the circuit court's denial of summary judgment. As further explained below, we affirm the trial court's denial of UMMC's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 7, 2020, Jackie Aycock underwent extensive cancer surgery on his jaw at UMMC. Later that year, Jackie and his wife, Debra Aycock, sought counsel to pursue a lawsuit against UMMC for money damages arising from injuries Jackie allegedly suffered during the surgery. According to the Aycocks, Jackie sustained nerve and circulatory damage to his left arm caused by improper placement of the arm, leaving him permanently disabled.

¶3. Before filing suit, the Aycocks' counsel determined that a notice of claim should be sent pursuant to Mississippi Code Section 11-46-11(2)(a)(ii). On December 16, 2020, counsel forwarded a notice of claim letter to four hospital executives:

  1. Jonathan Wilson, Chief Administrative Officer

  2. Dr. J. Michael Henderson, Chief Medical Officer

  3. D. Lynnice Pierce, Claims Manager

  4. William Smith, III, Esq., Counsel

¶4. The final paragraph of the notice-of-claim letter read as follows:

> This claim is made pursuant to § 11-46-11 Miss. Code Ann. (1972). Please investigate this claim and contact me at your earliest convenience. Suit will be filed against University Medical Center when allowed by Mississippi statutes if the matter is not amicably resolved prior to that date.

¶5.    On December 22, 2020, Lynnice Pierce forwarded, via email, the notice of claim

to at least eight other administrative employees so that a full investigation could begin.

The next day, Pierce sent the Aycocks a letter that stated the following:

> Dr. J. Michael Henderson, Mr. Jonathan Wilson, Mr. William Smith III, and
> I are in receipt of the Notice of Claim and Notice of Claim Supplement
> regarding the allegation of medical negligence to your client, Jackie Wayne
> Aycock.
>
> No action taken by the University of Mississippi Medical Center, including but
> not limited to, investigation, defense, settlement, or adjustment, shall be
> construed as a waiver of right to deny this claim, and is subject to a full
> reservation of rights.

¶6.    On February 23, 2021, after investigating the Aycocks' claim, UMMC denied their

claim with a formal letter.

¶7.    On March 8, 2021, more than one year after the surgery, the Aycocks sued the medical

center in Hinds County Circuit Court under the theory of *res ipsa loquitur* and for medical

negligence.  The Aycocks asserted that the hospital, its surgeons, its anesthesiologists, and

its nurses had departed from the standard of care in their care and treatment of Jackie,

causing him to sustain severe permanent injury to his left arm and shoulder.

¶8.    On April 8, 2021, the hospital answered the complaint and affirmatively pleaded that

the Aycocks' claims against it were time-barred by the one-year statute of limitations found

in Mississippi Code Section 11-46-11(3)(a), which provides as follows:

> All actions brought under this chapter shall be commenced within one
> (1) year next after the date of the tortious, wrongful or otherwise actionable
> conduct on which the liability phase of the action is based, and not after,
> except that filing a notice of claim within the required one-year period will toll
> the statute of limitations for ninety-five (95) days from the date the chief
> executive officer of the state entity or the chief executive officer or other

statutorily designated official of a political subdivision receives the notice of claim.

Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2019). UMMC claimed that the statute of limitations was never tolled because the Aycocks had failed to strictly comply with Section 11-46-11(2)(a)(ii), which requires service of a notice of claim to be made "only upon that entity's or political subdivision's chief executive officer." *See* Miss. Code Ann. § 11-46-11(2)(a)(ii) (Rev. 2019). According to UMMC, its chief executive officer is Dr. LeeAnn Woodward, M.D., who serves as the "Dean of the School of Medicine." It is undisputed that Dr. Woodward was not served with a notice of claim. The hospital further claimed that, because the statute of limitations had run, it was immune from the Aycocks' claims for money damages under the Tort Claims Act.

¶9. One day later, UMMC filed a motion for summary judgment seeking dismissal of the Aycocks' complaint with prejudice based on these affirmative defenses. In support of its motion, it submitted a sworn affidavit by one Molly A. Brasfield. In the affidavit, Brasfield stated that she "serve[s] as the Chief Human Resources Officer for the University of Mississippi Medical Center" and that "LouAnn Woodward, M.D., who serves as the Vice Chancellor of Academic Affairs and Dean of the University of Mississippi Medical School, is the chief executive officer of the University of Mississippi Medical School."

¶10. After the motion for summary judgment was filed, the Aycocks propounded requests for production of documents. The first document produced in response was an Executive Leader's Organizational Chart, which depicts the hospital's administrative hierarchy. The chart does not identify anyone as chief executive officer. The second document produced

was a Health Organizational Chart. It lists three officers with the designation of chief executive officer. According to the hospital, however, none of the individuals were the proper target for notice. The medical center also produced emails from Lynnice Pierce notifying other staff of the notice of claim.

¶11. In response, the Aycocks argued that the doctrines of waiver and equitable estoppel should apply to preclude the hospital from claiming that it did not receive proper notice of the claim. To support their argument, the Aycocks' counsel submitted an affidavit in which he stated he had made a diligent search for the identity of the chief executive officer, but he found nothing to indicate that Dr. Woodward held the position. Counsel stated that he "served a Notice of Claim upon Jonathan Wilson who [he] in good faith believed was the Chief Executive Officer," as well as three other individuals. He further stated that when he "received the aforesaid letter of December 23, 2020 [he] did not think it necessary to confirm that UMMC considered [the] Notice of Claim to be sufficient because the said letter specially acknowledged receipt of the Notice of Claim."

¶12. On December 21, 2021, the trial judge entered an order denying the hospital's motion for summary judgment. UMMC appealed.

¶13. On appeal, the medial center argues:

  (1)   The statute of limitations was not tolled by the notice of claim because the Aycocks failed to serve UMMC's chief executive officer, Dr. LouAnn Woodward, with a notice of claim. Consequently, the Aycocks' claims are time-barred.

  (2)   Under the strict compliance standard applicable to the notice requirements of Mississippi Code Section 11-46-11, the Aycocks are

5

precluded from offering any reasons for failing to serve proper notice on Dr. Woodward.

## STANDARD OF REVIEW

¶14.    "This Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." *Maldonado v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000) (citing *City of Jackson v Perry*, 764 So. 2d 373, 376 (Miss. 2000)).  Likewise, we review a trial court's grant or denial of a motion for summary judgment de novo.  *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 743 (Miss. 2013). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact.'"  *Id.*  (quoting Miss. R. Civ. P. 56(c)).  We view the evidence "in the light most favorable to the party against whom the motion has been made."  *Id.* (internal quotation marks omitted) (quoting *Kilhullen v. Kan. City S. Ry.*, 8 So. 3d 168, 174 (Miss. 2009)).

## DISCUSSION

¶15.    The University of Mississippi Medical Center contends that the language of Mississippi Code Sections 11-46-11(1) and 11-46-11(2)(a)(iii) of the Tort Claims Act required the Aycocks to serve their notice of claim on its chief executive officer, Dr. LouAnn Woodward.  It argues that the Aycocks' failure to strictly comply with the requirement before filing suit prevented any tolling of the one-year statute of limitations found in Section 11-46-11(3)(a), which caused the limitations period to expire prior to the Aycocks' filing suit on March 8, 2021.  It further asserts that it accordingly retained its immunity under Mississippi law and, consequently, the Aycocks' claims should be dismissed.

6

¶16. We have written that "[t]he basic principle of sovereign immunity is that the 'king can do no wrong.'" *Tallahatchie Gen. Hosp. v. Howe (Howe II)*, 154 So. 3d 29, 31 (Miss. 2015) (internal quotation marks omitted) (quoting *Tallahatchie Gen. Hosp. v. Howe* (*Howe I*), 49 So. 3d 86, 90 (Miss. 2010)). "So the 'State is free from any liabilities unless it carves an exception,' and these exceptions are found in tort claims acts." *Ivy v. E. Miss. State Hosp.*, 191 So. 3d 120, 122 (Miss. 2016) (internal quotations marks omitted) (quoting *Howe II*, 154 So. 3d at 31). "In Mississippi, through the MTCA provisions, the State has waived its immunity and the immunity of its political subdivisions 'from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]'" *Id.* (alteration in original) (quoting *Howe II*, 154 So. 3d at 31). "The MTCA provides the exclusive civil cause of action against a governmental entity[.]" *Id.* (internal quotation mark omitted) (quoting *Howe II*, 154 So. 3d at 31).

¶17. The Tort Claims Act sets forth the procedures a claimant must follow in order to assert a claim against a governmental entity. The procedure for notice of such a claim is governed by Mississippi Code Section 11-46-11. Section 11-46-11(1) provides as follows:

> After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.

Miss. Code Ann § 11-46-11(1) (Rev. 2019). In specifying the recipient of the notice of claim, Section 11-46-11(2)(a)(ii) provides, in pertinent part, as follows:

7

If the governmental entity to be sued is a state entity as defined in Section 11-46-1(j), or is a political subdivision other than a country or municipality, service of notice of claim shall be had only upon that entity's or political subdivision's chief executive officer.

Miss. Code Ann. § 11-46-11(2)(a)(ii) (Rev. 2019). There is no dispute that the medical center falls within the ambit of the above-quoted statutes.

¶18. Since the codification of the Tort Claims Act in 1993, there has been significant shifting by our courts as to what constitutes adequate compliance with the notice requirements of Section 11-46-11. A brief history of the relevant case law is, therefore, in order.

¶19. In *City of Jackson v. Lumpkin*, 697 So. 2d 1179, 1181 n.1 (Miss. 1997), *overruled by Stuart v. University of Mississippi Medical Center*, 21 So. 3d 544 (Miss. 2009), the Mississippi Supreme Court removed the familiar substantial compliance standard applicable to statutory notice requirements and held that strict compliance with the notice provisions of Section 11-46-11 was a mandatory jurisdictional requirement. Then, in *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237, 1240 (Miss. 1998), the Court abandoned strict compliance and held that "[w]hen the simple requirements of the Act have been substantially complied with, jurisdiction will attach for the purposes of the Act." The substantial compliance standard was clarified in *Carr v. Town of Shubuta*, 733 So. 2d 261, 263 (Miss. 1999) (quoting *Collier v. Prater*, 544 N.E. 2d 497, 499 (Ind. 1989)), *overruled by Stuart*, 21 So. 3d 544, in which the Court stated that substantial compliance "informs the [entity] of the claimant's intent to make a claim and contains sufficient information" to satisfy the purpose of the statute. The Court subsequently recognized that "[w]ith the replacement of strict compliance with that of

8

substantial compliance, the Court opened the door for the application of equitable estoppel[.]" ***Trosclair v. Miss. Dep't of Transp.***, 757 So. 2d 178, 181 (Miss. 2000).

¶20. In 2006, however, we held in ***University of Mississippi Medical Center v. Easterling***, 928 So. 2d 815, 820 (Miss. 2006), that substantial compliance was no longer sufficient with regard to Section 11-46-11(1)'s ninety day notice requirement. The Court wrote the "ninety-day notice requirement under section 11-46-11(1) is a 'hard-edged, mandatory rule which the Court strictly enforces[,]'" and that failure to comply with the ninety-day waiting period requires dismissal. ***Id.*** (quoting ***Ivy v. Gen. Motors Acceptance Corp.***, 612 So. 2d 1108, 1116 (Miss. 1992)). Despite the holding in ***Easterling***, the Court held in ***Stuart***, 21 So. 3d at 550, that the "notice requirements in the MTCA are substantive requirements, which are no more or less important than a statute of limitations. The notice requirements in the MTCA are not jurisdictional, and now we hold them to be nonjurisdictional and, therefore, waivable." The next year, the Mississippi Supreme Court held in ***Howe I***, 49 So. 3d at 91-92 (internal quotation marks omitted), that strict compliance is also the standard "in regard to whom the notice is sent."

¶21. In the instant case, the Aycocks argue that the doctrines of equitable estoppel and waiver preclude the hospital from asserting the defense that the Aycocks failed to serve the notice of claim on Dr. Woodward because it engaged in a course of conduct that induced reliance by the Aycocks to their detriment. Specifically, the Aycocks contend that UMMC presented confusing information to the general public concerning the identity of its chief executive, including the organizational charts, which do not identify anyone as holding the

9

title.  The Aycocks further contend that their counsel relied upon the December 23 letter "acknowledging receipt of the Notice of Claim" when he decided not to call the hospital's general counsel to confirm compliance.  In reply, the hospital argues that equitable estoppel and waiver cannot apply under the strict compliance standard applicable to Section 11-46-11.

¶22.  Indeed, as the holding in *Howe I* makes clear, the applicable standard in regard to whom the notice of claim is sent is strict compliance.  *Howe I*, 49 So. 3d at 91-92.  The Court in *Howe I* explained that "[t]his Court has a 'constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation.'"  *Id.*  (quoting *Easterling*, 928 So. 2d at 820)).  Moreover, the Court has long held that when interpreting statutes, "the word 'shall' is a *mandatory* directive."  *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994) (quoting *Am. Sand & Gravel Co. v. Tatum*, 620 So. 2d at 563 (Miss. 1993)).  Section 11-46-11(2)(a)(ii) expressly states that the "service of the notice of claim *shall* be had only upon that entity's or political subdivision's chief executive officer."  Miss. Code Ann. § 11-46-11(2)(a)(ii) (emphasis added).  As we have previously recognized, "[i]t would set a dangerous precedent if this Court were to ignore specific statutory requirements for notice."  *Randall*, 729 So. 2d at 1240 (internal quotation mark omitted) (quoting *Carpenter v. Dawson*, 701 So. 2d 806, 808 (Miss. 1997), *overruled by Carr*, 733 So. 2d 261).  Consequently, no doubt exists that the satisfaction of the presuit notice requirements of Section 11-46-11 constitutes a necessary condition precedent to a claimant's right to file suit under the Tort Claims Act.  When a claimant fails to comply with the mandatory provisions of Section 11-46-11, the proper remedy is dismissal.  *See Howe I*, 49 So. 3d at 93.

10

¶23. On the other hand, the holding in *Stuart* recognized that, while the notice requirements of Section 11-46-11 are mandatory, they are not jurisdictional. *Stuart*, 21 So. 3d at 550. Section 11-46-11 requirements are, therefore, like a statute of limitations, subject to waiver, estoppel, and equitable tolling. *Id.* at 550, 551 (Randolph, J., concurring); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).

¶24. Here, it is undisputed that the Aycocks never filed the statutorily required notice with the hospital's chief executive officer, Dr. Woodward. *See* Miss. Code Ann. § 11-46-7(1) (Rev. 2019). As Jonathan Wilson, Dr. J. Michael Henderson, D. Lynnice Pierce, and William Smith were not the "chief executive officer of the governmental entity[,]" under Mississippi Code Section 11-46-11(1), they were not the proper parties to receive the notice of claim. The Aycocks failed to comply with the mandatory requirements of Sections 11-46-11(1) and 11-46-11(2)(a)(ii) by failing to file a notice of claim with Dr. Woodward. "If notice is not given to the proper entity, the entire purpose of the ninety-day period is thwarted." *Howe I*, 49 So. 3d at 93. Absent the application of waiver or estoppel, the lawsuit against UMMC should be dismissed because the Aycocks failed to comply with the mandatory provisions of Section 11-46-11(1) and 11-46-11(2)(a)(ii). We take the present opportunity, however, to hold that *Stuart* opened the door for equitable principles such as waiver and equitable estoppel to apply to the notice requirements of Mississippi Code Section 11-46-11 under the strict compliance standard. *Stuart*, 21 So. 3d at 550. We hold, therefore, that the Section 11-46-11(2)(a)(ii) requirement that "service of notice of claim

11

shall be had only upon that entity's or political subdivision's chief executive officer[,]" is a mandatory requirement, but it is also subject to waiver and estoppel.

¶25.    Equitable estoppel has three elements: "(1) Belief and reliance on some representation; (2) Change of position, as a result thereof; (3) Detriment or prejudice caused by the change of position." *State v. RW Dev., LLC*, 357 So. 3d 1028, 1038 (quoting *Miss. Div. of Medicaid v. Yalobusha Cnty. Nursing Home*, 346 So. 3d 413, 426 (Miss. 2022). In *RW Development*, the Court noted the following behavior by the State as fulfilling the elements:

> By allowing multiple piers and harbors to be built over the years without first obtaining a lease, the Secretary of State represented that no lease would be required for the City to rebuild the pier in question here. RW changed its position by undertaking the expense and effort of planning and agreeing to rebuild. The change in position by the Secretary of State in now requiring a lease works to the detriment of RW by adding expense and delaying the process. RW argues in its brief that, because it is not being allowed to proceed, citizens—including handicapped citizens—are being denied the use of the pier, and efforts to promote tourism and economic development are frustrated. As such, all of the elements are satisfied for the application of equitable estoppel.

*Id.* at 1038.  In other words, the State's behavior over time amounted to a representation by the State that the City could build without a lease.

¶26.    In the instant case, the facts of the medical center's behavior, *e.g.*, corresponding with plaintiffs' counsel as though the plaintiffs' notice was being evaluated and investigated, that the hospital at the time had no clearly identified chief executive officer for purposes of giving presuit notice, the inconsistent organizational charts produced in discovery, and the hospital's in-writing denial of the claim, could amount to a representation that the hospital had received

notice. The hospital changed its position by seeking summary judgment on the grounds that it had not received notice, and plaintiffs were prejudiced when their claims failed as a result. The facts relied upon by the medical center and the dissent, *e.g.*, that the letter in response to the notice contained no misrepresentations on its face, might weigh against the application of equitable estoppel, but at most creates an issue of fact. "Concerning the application of equitable estoppel, '[the] issue becomes a question for the trier of fact when there is evidence to support a finding that the plaintiff reasonably relied on the actions of the defendant to his detriment.'" *Trosclair*, 757 So. 2d at 181 (Miss.2000) (quoting *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 668 (Miss. 1999) (Banks, J., dissenting)).

¶27.    The determination of whether waiver and equitable estoppel apply to a given situation includes the need to determine issues of fact. *See, e.g.*, *Hamilton v. Young*, 213 So. 3d 69, 73 (Miss. 2017) (noting question of fact whether jurisdictional issue was waived); *Kenney v. Foremost Ins. Co.*, 200 So. 3d 1048, 1052-1053 (Miss. 2016) (holding that a question of fact remained as to whether insured waived uninsured motorist coverage); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002) ("The equitable estoppel inquiry involves questions of fact and law."). As to the Aycocks's waiver and estoppel claims here, we hold that the record contains issues of material fact. *Laurel Yamaha Inc. v. Freeman*, 956 So. 2d 897, 906 (Miss. 2007) ("It is not our duty to weigh the competing evidence; it is our duty to determine if there is conflicting evidence for trial." (internal quotation marks omitted) (quoting *Est. of Johnson v. Chatelain*, 943 So. 2d 684, 687 (Miss. 2006))).

## CONCLUSION

¶28. We affirm the trial judge's denial of summary judgment, and we remand the case for further proceedings consistent with the instant opinion. If the Aycocks can establish equitable estoppel or waiver based on the medical center's conduct by competent evidence, then the statute of limitations will not operate to bar their claims. Should the Aycocks fail to establish waiver or estoppel, their claims fail.

¶29. **AFFIRMED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶30. This interlocutory appeal considers the denial of the University of Mississippi Medical Center's motion for summary judgment.

¶31. The majority affirms the denial of UMMC's summary-judgment motion. After a de novo review, the majority clearly rules that "[a]bsent the application of waiver or estoppel," there is no genuine issue of a material fact in dispute, and UMMC is entitled to a judgment as a matter of law because the Aycocks failed to properly provide the statutorily required notice to UMMC's chief executive officer as required by Mississippi Code Section 11-46-7(1) (Rev. 2019). Maj. Op. ¶ 24. I agree with the majority's conclusion that "[t]he Aycocks failed to comply with the mandatory requirements of Mississippi Code Sections 11-46-11(1) and 11-46-11(2)(a)(ii) [(Rev. 2019)] by failing to file a notice of claim with Dr. [LouAnn] Woodward." Maj. Op. ¶ 24.

14

¶32. But I respectfully disagree with and dissent from the majority's ruling that "the record contains issues of material fact." Maj. Op. ¶ 27. And I disagree with and dissent from the decision to affirm the denial of the summary-judgment motion and to remand for the trial court to determine whether "the Aycocks can establish equitable estoppel or waiver based on UMMC's conduct by competent evidence[.]" Maj. Op. ¶ 28.

¶33. The issues of waiver and equitable estoppel were before the trial court[1] and are now before this Court on de novo review. Our de novo review must consider whether there is a genuine issue of material fact in dispute as to waiver or equitable estoppel. If there is such issue of material fact, then we should remand this case for further proceedings. If we do not find that a genuine issue of material fact exists as to waiver and equitable estoppel, then we must decide whether UMMC is entitled to a judgment as a matter of law. M.R.C.P. 56(c). If so, we should reverse and render this case in favor of UMMC. There is simply no basis to remand this case for a fact determination by the trial court of waiver and equitable estoppel.

¶34. In my opinion, the Aycocks have failed to establish that there is a genuine issue of a material fact in dispute on the issues of waiver or equitable estoppel. As a result, I find the claims against UMMC should be dismissed and summary judgment should be entered because the one-year statute of limitations was never tolled. I examine both equitable estoppel and waiver.

A.  *Equitable Estoppel*

---

[1] The record shows that the Aycocks asserted waiver and equitable estoppel as a defense to UMMC's summary-judgment motion.

15

¶35. Mississippi law defines the elements of equitable estoppel as: "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 492 (Miss. 2005) (internal quotation marks omitted) (quoting *Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1249 (Miss. 2000)). "For the doctrine of equitable estoppel to apply, the plaintiff must have relied on a misrepresentation by the defendant[.]" *Kimball Glasco Residential Ctr., Inc. v. Shanks*, 64 So. 3d 941, 948 (Miss. 2011). "Equitable estoppel should not 'be applied so liberally as to allow a plaintiff to assert estoppel where no inequitable behavior is present.'" *Dietz v. S. Miss. Reg'l Ctr.*, 231 So. 3d 219, 227 (Miss. Ct. App. 2017) (quoting *McCrary v. City of Biloxi*, 757 So. 2d 978, 981 (Miss. 2000)).

¶36. The Aycocks first assert that UMMC "presented very confusing information to the general public and to the [trial] [c]ourt in this case concerning the identity of the Chief Executive Officer." But as UMMC notes, it "demonstrated to the trial court how easy it would have been for the Aycocks to have discovered Dr. Woodward's identity through a Google search or a search of recent case law in which the Medical Center was a defendant." *See, e.g.*, *Robertson v. Univ. of Miss. Med. Ctr.*, No. 3:18cv546-HSO-JCG, 2020 WL 1339627 at *3 (S.D. Miss. Mar. 23, 2020).

¶37. The Aycocks next assert that they relied on UMMC's December 23 letter "stating that UMMC was in 'receipt of the Notice of Claim' without any mention of whether UMMC considered anything about the notice to be deficient." They claim that "[t]he letter acknowledging the Notice of Claim would lead any reasonable person to conclude that

16

UMMC did not contest the sufficiency of the Notice of Claim." But UMMC's letter did not misrepresent any facts. *Shanks*, 64 So. 3d at 948. Nor did UMMC's failure to mention the deficiency amount to inequitable behavior. *Dietz*, 231 So. 3d at 227 (quoting *McCrary*, 757 So. 2d at 981). "[I]t is not the responsibility of the State, nor any other potential defendant, to inform adverse claimants that they must comply with the law." *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 667 (Miss. 1999). In other words, it was not UMMC's duty to inform the Aycocks that their notice of claim was deficient and that they did not comply with Section 11-46-11(2)(a)(ii). Mandatory compliance with the notice of claim requirements rests with the Aycocks, not UMMC.

¶38. Despite the Aycocks' assertion, nothing in the letter suggested that UMMC did not contest the sufficiency of the notice of claim. The letter simply confirmed receipt of the notice of claim. Notably, the letter advised that UMMC was not waiving any rights, including its right to deny the claim, and it encouraged the Aycocks to contact UMMC with any questions they had about its contents. No genuine issue of material fact in dispute would justify a finding of equitable estoppel.

  B.  *Waiver*

¶39. The Aycocks argue that "[i]n addition to equitable estoppel, UMMC's actions constituted a valid waiver of the Notice requirements[.]" They first assert as follows:

> This Court should consider [UMMC]'s December 23rd letter to be a waiver of the contention that the Notice of Claim was deficient. The letter specifically states that UMMC was in receipt of the Notice of Claim and Notice of Claim Supplement. This Court should now hold that UMMC waived its claim of defective service of the Notice of Claim because the letter acknowledging receipt of the Notice of Claim contained no statement concerning an alleged

17

> deficiency in service of the Notice of Claim and no requirement exists for UMMC to reply to the Notice of Claim at all.

But as previously noted, the letter specifically advised the Aycocks that "[n]o action taken by [UMMC] . . . shall be construed as a waiver of right to deny this claim[.]" And, again, UMMC has no obligation to inform the Aycocks that their notice of claim is deficient. It was the Aycocks' duty to follow the law and to properly serve UMMC with a notice of claim under Section 11-46-11.

¶40.    The Aycocks assert UMMC waived its right to claim that the notice of claim was deficient since several UMMC employees were informed of the claims set forth in the notice and UMMC conducted an investigation as contemplated by the waiting period. According to the Aycocks, "[t]here is no dispute that UMMC, the entity itself, was on notice, which is the point of the . . . notice of claim requirement." But the fact that UMMC received actual notice of the Aycocks' claims through a notice delivered to someone other than its CEO is irrelevant. Section 11-46-11(2)(a)(ii) requires the CEO to be served. Miss. Code Ann. § 11-46-11(2)(a)(ii). Receipt of the notice of claim by personnel other than the CEO does not waive the Aycocks' duty to strictly comply with the notice requirements. *See **Burnett v. Hinds Cnty. ex rel. Bd. of Supervisors***, 313 So. 3d 471, 476-77 (Miss. 2020) ("While Burnett sent notices of claims to various officials in Hinds County, . . . Burnett did not serve the Hinds County Chancery Clerk with a notice of claims. . . . Because Burnett did not file a notice of claim upon the Hinds County Chancery Clerk, all MTCA claims against Hinds County/the Hinds County Defendants in their official capacities must be dismissed."); *see also **Dobbs v. City of Columbus***, 285 So. 3d 1219, 1223-24 (Miss. 2019) (finding the case

18

was properly dismissed because the plaintiff served her notice of claim upon the city's chief operating officer instead of the city's chief executive officer or the city clerk (citing *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (Miss. 2010))).

¶41. "Rule 56(c) of the Mississippi Rules of Civil Procedure allows entry of summary judgment where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law." *Slatery v. Ne. Miss. Cont. Procurement, Inc.*, 747 So. 2d 257, 259 (Miss. 1999) (citing M.R.C.P. 56(c)). "This Court's standard of review for the grant or denial of summary judgment is de novo[.]" *Id.* (citing *Robinson v. Singing River Hosp. Sys.*, 732 So. 2d 204, 207 (Miss. 1999)). If no "triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party[,]" then the trial court's decision to deny summary judgment should be reversed. *Id.* (internal quotation mark omitted) (quoting *Robinson*, 732 So. 2d at 207); *see also Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 80 (Miss. 2017) ("Because there are no triable issues of material fact in the record for the case at hand, . . . we reverse the trial court's decision to deny summary judgment[.]").

¶42. Here, based on my de novo review, I find no "triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party." *Slatery*, 747 So. 2d at 259 (internal quotation mark omitted) (quoting *Robinson*, 732 So. 2d at 207). Thus, I find the trial court's denial of summary judgment should be reversed. There is simply no reason for this Court to remand this case to the trial court to allow the Aycocks a second bite at the equitable estoppel and waiver apple.

19

¶43. The Aycocks failed to serve the notice of claim on UMMC's CEO, which was required under Section 11-46-11(2)(a)(ii). Maj. Op. ¶ 24. They further failed to establish the equitable defenses of waiver and estoppel. Consequently, the Aycocks' claims against UMMC must fail. Maj. Op. ¶ 28. I would reverse the trial court's denial of summary judgment and render judgment in favor of UMMC.